## LEACH v. SMITH AND WIFE.

CONFEDERATE MONEY ACT. The act of March 5, 1867, known as the Confederate money act, is *unconstitutional*.

CONFEDERATE MONEY. A contract made in consideration of or payable in a currency, the issuance of which is prohibited by law, is void.

CONTRACTS. Where parties contract to pay in a fluctuating medium, whether it be a legal tender currency or not, they contract in view of and are each bound without regard to the fluctuations.

At the time a contract is to be executed, the maker is entitled to satisfy it by a specific performance.

Where a party neglects to satisfy a contract by a specific performance at the time it is due, he can not afterwards do so.

MEASURE OF DAMAGES. The measure of damages in such a case (unless the contract is for the payment of a legal tender) is the value of the article at the time it is due.

If the contract is payable in legal tender, the measure of damages is the amount and interest.

PLEADING. Where the plea, in an action on a note, sets up that it was agreed that the note should be paid in Confederate money, which was a depreciated currency, this is not a plea of failure of consideration.

The declaration is confessed by the defendant refusing to plead further, after the demurrer to the plea is sustained.

PRACTICE. It is proper for the court to assess the damages, in a suit upon an instrument of writing, after rendering an interlocutory judgment upon demurrer.

Where the declaration sets forth the notes sued on, it is not error for the judgment to fail to show that the notes offered in evidence were the same. The maxim "Omnia præsumuntur solemniter esse pacta" governs in such cases.

EVIDENCE. At the common law the defendant can not show that a note payable on its face in so many dollars was agreed to be paid in a depreciated currency.

*Error to Ashley Circuit Court.*

Hon. WILLIAM M. HARRISON, Circuit Judge.

GARLAND & NASH, for plaintiff.

The plea in this case is, in truth, but a plea of *partial failure of consideration.* It is not an attempt to change or vary the written contract, but simply one to show that, as to so much of the money demanded, there was no consideration. And under this view of the matter, it was unquestionably proper for Leach to go behind the notes and show the parts of the contract. 2 *Parsons Con.,* 59, 62, 63, 70, 79.

The rule, as well and justly laid down by this court in *Roane v. Green & Wilson,* 24 *Ark.,* 210, does not apply here. This is a very different case from that, and proceeds upon altogether other points.

If our position be correct, so much of the demurrer as attacks the plea for setting up two contracts, or for being double, is not well taken.

And also that part of the demurrer which relates to the tender is not good. 17 *Ark.*, 445.

Then, as to the other point, setting up a private contract between Leach and Lassiter, it is a clear proposition of law that whatever rights, legal or equitable, Leach had against these notes as against Lassiter, (the payee,) he still held them as against the assignee of Lassiter. *Worthington v. Card & Co.*, 22 *Ark.*, 277; *Walker, et al., v. Johnson, et al.,* 13 *Ark,* 531; 4 *Eng.*, (9 *Ark.*,) 501–5; *Dig.*, *p.* 158, *sec.* 3.

English & Wilshire, for defendants.

The notes sued on were payable in "dollars." The plea does not state what the consideration of the notes was, but sets up a verbal agreement that they were to be paid in Confederate money, or bank bills then current. Such parol agreements can not be set up to vary the plain terms of a written contract. *Roane v. Green & Wilson*, 24 *Ark.*, 210.

The plea was an attempt to bring the case within the provisions of the act of March 5, 1867. If the act is valid, the plea is bad in not averring the value of either Confederate money or bank bills.

If the contract be in the alternative, as to do a thing on one day or another, or in one way or another, the right of election is with the promissor, if there be nothing in the contract to control the presumption. 2 *Parsons on Con.*, 657.

If the contract is to do one of two things by a given day, the debtor has until that day to make his election; but if he suffer that day to pass, without performing either, his contract is broken, and his right of election gone. 2 *Parsons on Con.*, 657, *note c,* and cases of *Choice v. Moseby,* 1 *Baily,* 136; *McNell v. Clark,* 4 *Johnson,* 465, *cited.*

Here the plea sets up an agreement to pay the notes in Con-

federate money, or bank bills current at the date of the notes, two distinct modes of payment. Until and at the maturity of the notes the maker had the right to elect either mode of payment; after that the right of election was in the holder. If the maker in fact made an election, he should have averred it, and alleged the value of the currency so elected as the means of payment. If he made no election the plea should have averred the value of each currency, so that the amount to be recovered by the holder might be put properly in issue.

Such parol agreement being worthless by the common law, and the notes being commercial, the assignee took them unincumbered with any such defense; and to create such defense by an act of the Legislature, would be to legislate away his rights, and impair the obligation of the contract, which could not be done.

STORY, Special C. J.

Smith and wife brought assumpsit against Leach, on two promissory notes executed by Leach, each bearing date of August 1, 1862, each for the sum of "two thousand and eighty-five dollars," with interest at the rate of eight per cent., from due, payable to the order of Charles J. Lassiter—one on January 1, 1864, and the other on January 1, 1865, both of which were indorsed by Lassiter to Laura A. Smith.

The defendant in the court below interposed the following plea: "And the said defendant, by his attorney, comes and defends the wrong and injury, when, &c., and says *actio non*, as to the sum of $3,333\frac{33}{100}$, part and parcel of the sum of said two promissory notes in plaintiffs' declaration mentioned, because he says it was understood and agreed by and between the defendant and Charles J. Lassiter, the payee in said two promissory notes in plaintiffs' declaration mentioned, at the time of making said notes, that said promissory notes were to be paid in Confederate money, or other bank bills then current; and the defendant avers, that at the date of said promissory notes, in said plaintiffs' declaration mentioned, the value of

said promissory notes in United States legal tender notes was the sum of $836$\frac{66}{100}$, which said sum of $836$\frac{66}{100}$ is due to the plaintiff, and he may have judgment therefor, and that the said sum of $3,333$\frac{33}{100}$ is the excess over such value, and this the said defendant is ready to verify." "To which the plaintiffs interposed their demurrer, which was by the court sustained, and the defendant refusing to plead further," says the record, " it is ordered that the said plaintiffs have judgment, and on motion, the instruments sued on are filed, whereby it appears that the plaintiffs' damages are reduced to a certainty, and are by the court assessed at $5,226$\frac{40}{100}$. It is therefore considered," &c.; judgment in the usual form.

The first error assigned is that the court below sustained the demurrer to the defendant's plea.

It was evidently attempted by this plea to set up, under the act of March 5, 1867, laws of 1866–7, page 195, other and different contracts from those imported by the instruments on which suit was brought. Certainly it can not be held to be a plea of partial failure of consideration, as argued by the appellant, for the plea does not even state what was the *consideration* of the notes, but attempts to show that the notes were *payable* in one or more kinds of depreciated currency. 2 *Blackstone*, 443. This, as has been well settled in the case of *Roane v. Green & Wilson*, 24 *Ark.*, 210, under the common law rule of evidence, the defendant would not be permitted to show.

Conceding, for the present, the validity of the act of the Legislature, to which reference is above made, the plea is still defective. The act provides "that in all suits at law or in equity, upon any bond, bill, promissory note, or other contract for the payment of money, which was intended and understood or agreed by the contracting parties should be paid in Confederate money or other paper currency, the plaintiff or complainant in such suit shall recover in gold and silver or United States legal tender notes only the *value* of such *Confederate* money, or other *paper currency*, as estimated in the community at the *time* and place of making said contract, and interest thereon."

And it is further provided "that where any such bond, bill, promissory note, or other written contract does not express the kind of money to be paid, it shall be allowed the defendant to plead or answer such intention and understanding or agreement in bar of the excess over such value, and prove the same by parol testimony."

There is no allegation in the plea of the value of *Confederate money* or *bank bills then current*, in which, as the plea alleges, the notes were to be paid. The allegation is, " the value of said promissory notes," &c. The value of the promissory notes, and the value of Confederate money or other bank bills, might be very different. The value of the promissory notes, in business parlance, was whatever they would bring in the market, and would depend greatly upon the responsibility of the maker. The statute provides for the recovery of the value of "Confederate money or other paper currency;" the plea for the recovery of the value of the promissory notes, the respective values of which, as we have seen, might be very different.

But we think our duty requires us to go further, and decide whether the Legislature has not exceeded its powers, and passed an act prohibited by the Constitution of the United States or of this State. It is conceded to be the correct doctrine that every enactment of the State Legislature is presumed to be constitutional and valid; that, before it can be pronounced otherwise, that clause of the Constitution must be clearly designated with which the act of the Legislature conflicts, since the Legislature, representing the people, have, as a rule, power to pass any and all acts, except those which are prohibited by either the State or Federal Constitution; and, under our system of government, it is only from the Constitution that the judicial department derives its authority to nullify the acts of a coördinate department. *State v. Ashley*, 1 *Ark.*, 513. *Eason v. State*, 11 *Ark.*, 481.

When we call to mind the changes effected by this law, and its importance to the people of this State, and doubting not

that the purest motives of public policy influenced the legislative action, we are admonished to approach a subject of so much moment in that calm and even frame of mind which can only be produced by laying aside all extraneous considerations, and to decide it as a pure question of constitutional law.

For the purpose of considering the question, we will grant that the parties in this case contracted with a distinct understanding that the payment was to be made in Confederate money. This contract must be enforced according to its terms, or the obligation of the contract is changed and impaired. The terms of the contract, then, would be, that the defendant, in one and two years after date, respectively, would pay the sum of $2,085 in Confederate money, with interest from maturity, at the rate of eight per cent. Here the parties contract for a fluctuating currency, and will any one contend that at the time the note became *due* the maker of the note was not entitled to pay it in Confederate money, though during the time the currency may have depreciated fifty per cent.? In other words, where parties contract to pay in a fluctuating medium, do they not contract in view of and are not each bound without regard to the fluctuations? This is certainly so, whether the payment is to be made in a legal tender currency or not. *Wallace v. Henry*, 5 *Ark.*, 105. *Story on Notes, sec.* 390–394. *Story on Con. of Laws, sec.* 311–314.

We have assumed that no question is raised as to the legality or illegality of Confederate money; for, if a contract is made in consideration of or payable in a currency the issuance of which is prohibited by law, the entire contract is void. 5 *Ark.*, 684; 4 *Peters*, 410; 8 *Peters*, 40; 5 *Bing.*, (*N. C.*,) 675; 4 *Coldwell*, 275, 300; 3 *Coldwell*, 20, 157, 295, 419 *and* 468.

But, passing on: At the time the contract was to be executed, the maker was entitled to satisfy it by a specific performance. 5 *Ark.*, 105. But the act takes away this right, and provides that it shall be discharged in a different manner. Though the obligation of the contract may have been to pay in Confederate money, yet the act attempts to force payment in

gold and silver, or United States legal tender notes, for the operation of the statute is not confined to contracts which had become due before its passage, and the time for the specific performance of which had, therefore, gone by, but extends also to contracts which might fall due after the passage of the law.

Again: The contract was to pay at a certain time after date; and, although where a party neglects to satisfy a contract by a specific performance at the time it is due, he can not afterwards do so. The measure of damages (if the contract is not for the payment of a legal tender) is the value of the article at the time it is *due*, but the statute attempts to make the value of the article at the time the contract *was made* the measure of damages. *Wallace v. Henry*, 5 *Ark.*, 105; *Douglass v. McAllister*, 3 *Cr.*, 298; *Blydenburg v. Welch, Bald.*, 331; *Barnard v. Conger*, 6 *McL.*, 497; *Shephard v. Hamptin*, 3 *Wheaton*, 200; *Halsey v. Hurd*, 6 *McL.*, 102.

If the contract is payable in legal tender, the measure of damages is the amount with interest. *Sedgwick on Meas. of Dam.*, 233; 6 *Howard*, 146.

Again: The contract was to pay interest, *after one and two years*, at eight per cent., while the act provides that legal interest, or *six* per cent., shall be paid *from the time the contract was made*.

In *Greene v. Biddle*, 8 *Wheaton*, 84, the Supreme Court of the United States say, that "the objections to a law on the ground of its impairing the obligation of a contract can never depend upon the extent of the change which the law affects in it. Any deviation from its terms, by postponing or accelerating the period of its performance, *imposing conditions* not expressed in the contract, and *dispensing with those which are*, however minutely or immaterial in their effect upon the contract of the parties, impairs its obligation." And, in *Ogden v. Sanders*, 12 *Wh.*, 256, the court say, "it is perfectly clear that a law which enlarges, abridges, or in *any manner changes the intention resulting from the stipulation of the contract*, necessarily impairs it.

We have seen that the statute does impose conditions which are not expressed in the contract, and dispenses with some of those which are; that it materially "changes the intention resulting from the stipulations of the contract."

The statute, in effect, provides that if A promises to pay to B, five years after date, in *Confederate money*, one thousand dollars, with interest at the rate of *eight* per cent. from *maturity*, it shall be held to be a promise by A to pay to B, in *gold and silver, or United States legal tender notes, say one hundred dollars*, with interest at the rate of *six* per cent. from the date of the contract.

The cases of *Satterlee v. Mathewson*, 2 *Peters*, 380, *and Watson, et al., v. Mercer*, 8 *ib.*, 110, which have been cited in support of the validity of the act of March 5, 1867, so far as they have any bearing on the subject, sustain our position. The same principle runs through both, and a reference to one case will be sufficient. The facts in the latter case were as follows: In 1785, James Mercer and his wife, Margaret, executed a deed to Nathan Thompson, for the premises in controversy, which belonged to Mercer's wife, and Thompson conveyed the same premises back to James Mercer. The certificate of acknowledgment of the conveyance to Thompson was defective, under the law in existence at the time. After the death of Margaret Mercer, her heirs at law, Watson and wife, brought ejectment for the premises. In this suit, the deed from Mercer and wife to Thompson, being defective, as above stated, it could not be introduced in evidence, and Watson and wife, as such heirs at law, recovered the premises and went into possession. In April, 1821, the Legislature passed an act upon the subject of conveyances by wives, providing that no such deed should be invalid for want of proper acknowledgment, but in all cases should be as effectual for passing title as if all necessary requisites had been complied with. In 1829, after the passage of this act, the Mercers brought suit and recovered judgment, which, on appeal to the Supreme Court of Pennsylvania, was affirmed. Watson and wife then appealed to the Supreme Court of the United States.

The argument for the plaintiff in error was, first: "That the act violated the Constitution of the United States, because it divested their vested rights, as heirs at law, in the premises in question; and secondly, that it violated the obligation of a contract, that was, of the patent granted by the proprietaries of Pennsylvania to the ancestors of the original defendants, from whom they trace their title to the premises in question by descent through Margaret Mercer." The court say: "As to the first point, it is clear that this court has no right to pronounce an act of the Legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The Constitution does not prohibit the States from passing retrospective laws generally, but only *ex post facto* laws. * * * * * * In the next place, does the act of 1826 violate the obligation of any contract? In our judgment it certainly does not, either in its terms or its principles. It does not even affect to touch any title acquired by a patent, or any other grant. It supposes the title of *femes covert* to be good, however acquired, and only provides that their deeds shall not be void by reason of defective acknowledgments, where they have sought to convey them. So far, then, as it has any legal operation, it goes to confirm, not to impair, the contracts of the *femes covert*. It gives the very effect to their acts and contracts which they intended to give." No one can doubt the correctness of the decision. The contract of conveyance by Mercer and wife to Thompson was enforced according to its terms, and the desire and agreement of the parties. If there was any contract between the plaintiff in error and any other party that was violated, we have failed to discover it, and the Legislature could not well have violated an obligation, there being no contract. The facts in this case are very different. There is a contract between the plaintiff and defendant in error, the terms of which are changed as we have seen. Only because these cases have been *relied* upon to sustain the statute, have we devoted so much time to their consideration.

If the act of March 5, 1867, known as the "Confederate money act," had been framed for the purpose of allowing parties to show that it was agreed at the time of making any contract, that it should be paid in Confederate money, or other paper currency, and permitted the usual rule of damages to follow a breach of such contract, a different conclusion might have been reached. On this point, we do not intend to express an opinion, unless it may be necessary, in order to decide whether the defendant may not, under the act of March 5, 1867, plead that it was intended and understood, or agreed between the contracting parties, that such bond, bill, promissory note or contract, should be paid in Confederate money, without alleging the value of Confederate money, or attempting to recover in that shape.

It is well settled that a statute may be unconstitutional in some provisions and not in others, with this limitation, however, that the parts so held respectively constitutional and unconstitutional, must be wholly independent of each other; but where the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected, in meaning or intention, that it can not be presumed that the Legislature would have passed one without the other, all of the provisions which are thus connected or dependent, must fall with the unconstitutional provision. 2 *Gray*, 98 *and* 99; 1 *Gray*, 1; 5 *Gray*, 97; 16 *Pickering*, 95; 5 *Ohio State*, 573; 29 *Ala.*, 573; 5 *Gray*, 482 *and* 486, *n.*

A fair inspection of the act will satisfy any one who may examine that *all* of its provisions are connected together in subject matter, are operating together for the same purpose, and that the Legislature had but one object in view—that is, to enjoin the payee of such bond, bill, or promissory note from recovering "in gold and silver or United States legal tender notes, the excess over the value of such Confederate money or other paper currency, as estimated in the community, at the time and place of the making of said contract and interest thereon."

The repugnancy between the statute and the Constitution of the State, as well as the Constitution of the United States, is not doubtful, but clear.

Any course of reasoning that arrives at a different conclusion, we think, must be logically untrue. We should violate the solemn obligation we have taken upon ourselves, if we failed to declare the act unconstitutional and void.

The second error assigned is, that the evidence was insufficient to sustain the judgment. It is a sufficient answer to say that the declaration was confessed by the defendant refusing to plead further. The record shows that the instruments on which suit was brought were filed, and that the court by calculation assessed the damages. *Vide Johnson v. Frank*, 16 *Ark.*, 199.

The third error assigned is, that the judgment is informal and voidable, because the damages were assessed by the court. It was not only proper, but the statute requires "the court to assess the damages, after rendering an interlocutory judgment upon demurrer, in a suit founded upon an instrument of writing, and the demand is ascertained by such instrument." *Gould's Dig.*, ch. 133, sec. 8.

The fourth error assigned is, that the judgment is informal and voidable, because it does not show the dates and amounts of the notes on which suit was brought or that the notes filed and offered in evidence were the same.

There is nothing in this assignment. The declaration, which is a part of the record, clearly sets them forth, and it would certainly be a singular ruling for this court to presume that the circuit court received other notes than those on which suit was brought, in evidence, when no objection appears to have been made to their introduction. The maxim, " *Omnia præsumunter solemniter esse acta*," governs in such cases. 3 *B. and C.*, 327; *Lenox v. Pike*, 2 *Ark.*, 14.

We think the proceedings and judgment are in every respect sufficient. *Vide* 19 *Ark.*, 680; 1 *Monroe*, 250.

Judgment affirmed.

Chief Justice WILSHIRE being disqualified, did not sit in this case.

Hon. WILLIAM STORY, special Chief Justice.