## L. R. & FT. SMITH RY. CO. v. HANNIFORD.

1. STATUTES: *Act to enforce prompt delivery of freight is constitutional.*

The act of the Legislature, approved February 27, 1885, which provides that no railroad company shall charge and collect, or endeavor to charge and collect, a greater sum for transporting goods than is specified in the bill of lading; and that, if any railroad company shall refuse to deliver to the owner any goods, upon the payment or tender of the freight charges due, as shown by the bill of lading, it shall be liable in damages to the owner of the goods to an amount equal to the freight charges for every day the goods are held after payment or tender, is general and uniform in its operation upon all persons coming within the class to which it applies, and is not special legislation within the prohibition of the Constitution.

2. INTERSTATE COMMERCE: *Not affected by act of 1885.*

The act of February 27, 1885, is a mere police regulation to enforce the prompt delivery of goods on the payment or tender of freight charges, and does not interfere with or affect interstate commerce.

3. RAILROAD COMPANIES: *Duties and liabilities as to freight.*

Where the weight of goods carried by a railroad company is not specified in the bill of lading it is the duty of the company, under the act of February 27, 1885, to weigh the goods without unreasonable delay, and thus ascertain the amount of the charges, according to the rates specified in the bill of lading; and if it fails to do so, it will be liable in damages for failure to deliver the goods upon payment or tender of the amount due for transportation.

APPEAL from *Conway* Circuit Court.
G. S. CUNNINGHAM, Judge.

*J. M. Moore* for appellant.

1. The effect of the act, if applicable to this case, is to regulate the charges to be collected on freight shipped from distant points in other States, and transported over several connecting lines of railroads to points in this State, thus affecting commerce between the States. See *16 Am. & E. R. Cas., p. 1; 91 U. S., 282; 10 Wall., 565; 16 A. & E. R. Cases, 40; 69 Iowa, 481; 95 U. S., 487; 26 A. & E. R. Cases, 1; 23 Cent. L. J., 561.*

2. The act is penal in its nature and in derogation of the common law, and must be strictly construed. *9 A. & E. R. Cas., 171–2; 69 Ind., 199; 57 id., 495.* No action can be maintained under it, unless the facts bring it within the letter or plain spirit of the act.

The bill of lading in this case does not specify the amount of the charges.

3. The tender of appellees was conditional. This was not sufficient to put defendant in default, under the act. *2 Pars. on Cont., 646, and notes.*

*Eugene B. Henry* for appellees.

1. The act does not attempt to regulate or control commerce, or to pass the boundary of police power of the State. It does not attempt to regulate charges or transportation; fixes no rates, but when a railroad makes a contract it merely requires good faith, and requires them to deliver in accordance with it.

The State has power to prohibit excessive freight charges and discriminations. *16 Wall., 694; 19 id., 584; 63 Me., 279;*

*47 Penn. St., 340; 19 Minn., 434; 31 Iowa, 188; 1 Am. & E. R. Cas., 615; 7 id., 628; 12 id., 1; 1 id., 403; 9 id., 385; 18 A. & E. Corp. Cas., 502.*

The act is not penal, but remedial. *38 Me., 107; 20 id., 221; 13 Pick., 94.*

BATTLE, J. On the 4th of January, 1886, plaintiffs, Hanniford, Beal & Wills, purchased of the Armour Packing Company, of Kansas City, Mo., 25,000 pounds of meat, and delivered it to the Southern Kansas Railroad Company, which executed its bill of lading therefor, and thereby contracted to ship and deliver it to the plaintiffs, at Morrilton, in this State, at the rate of fifty-five cents per hundred pounds. The defendant, Little Rock & Fort Smith Railway Company, being one of the connecting line of carriers, received the meat at one end of its line and carried it to Morrilton. The weight of the meat was not specified in the bill of lading. In the way-bill delivered to the defendant the weight specified was 33,900 pounds. Plaintiff tendered payment of the freight charges on 25,000 pounds at the rate specified in the bill of lading, and the defendant demanded freight on the 33,900 pounds, and for about four days refused to deliver unless freight on that amount was paid. After a delay and refusal to deliver for several days plaintiffs brought an action against the defendant for the meat, when defendant agreed to accept plaintiffs' offer. Plaintiffs then brought this action for damages to an amount equal to the freight charges tendered for every day defendant refused to deliver the meat after the tender of payment was made.

This action was brought under the act of the Legislature, approved February 27, 1885. which reads as follows:

Be it enacted by the General Assembly of the State of Arkansas: "SECTION 1. That it shall be unlawful for any railroad company in this State, its officers, agents or employes,

to charge and collect, or to endeavor to charge and collect, from the owner, agent or consignee of any freight, goods, wares or merchandise of any character or kind whatever, a greater sum for transporting said freight, goods, wares or merchandise than is specified in the bill of lading.

"SEC. 2. That any railroad company, its officers, agents or employes, having possession of any goods, wares and merchandise of any kind or character whatever, shall deliver the same to the owner, his agent or consignee, upon payment of the freight charges, as shown by the bill of lading.

•"SEC. 3. That any railroad company, its officers, agents or employes, that shall refuse to deliver to the owner, agent or consignee, any freight, goods, wares and merchandise of any kind or character whatever, upon the payment, or tender of payment, of the freight charges due, as shown by the bill of lading, the said company shall be liable in damages to the owner of said freight, goods, wares or merchandise, to an amount equal to the amount of the freight charges for every day said freight, goods, wares or merchandise is held after payment, or tender of payment, of the charges due, as shown by the bill of lading, to be recovered in any court of competent jurisdiction."

This act being general and uniform in its operation upon all persons coming within the class to which it applies, it does not come within that special legislation prohibited by the Constitution. For it applies to and embraces all persons "who are or who may come into certain situations and circumstances," and is "general and uniform, not because it operates upon every person in the State, for it does not, but because every person who is brought within the relations and circumstances provided for, is affected by the law." *McAunich v. The Mississippi & Missouri Railroad Co.*, 20 Iowa, 342; *The Iowa Railroad Land Co. v. Soper*, 39 Iowa, 116; *Chicago, etc., R. R. Co. v. Iowa*, 94 U. S., 163; *Humes v. The Missouri Pacific Railway*

*Co., 82 Mo., 221; Davis v. State, 3 Lea, 379; Cooley on Const. Lim. (5th ed.), 481.*

It is of that class of legislation specially enjoined by the Constitution of the State upon the General Assembly. For section 10 of article 17 of the Constitution ordains: "The General Assembly shall pass laws to correct *abuses* and prevent discriminations and *excessive charges* by railroad, canal and turnpike companies for transportating freight and passengers, *and shall provide for enforcing such laws by adequate penalties and forfeitures.*" Vested with the power to correct abuses by railroad companies they had the right "to determine what on the part of the railroad constitute abuses, and to determine what laws will correct them, as well as what remedies may be necessary to secure the enforcement of such laws." In the exercise of this power and right the act under consideration was, doubtless, passed. *Houston & Central Railroad Co. v. Harry & Bro., 18 Am. & Eng. Railroad Cas., 502.*

But it is contended that if this act is applicable to this case, its effect is to regulate the charges to be collected on freight shipped from distant points in other States and transported over several connecting lines of railroads to points within this State, and thereby affect interstate commerce, and is void. It is true the exclusive power to regulate commerce among the States is given by the Constitution of the United States to Congress; but the vesting of this power in Congress was not a surrender of that which is known as the police power. That power still belongs to the State. The power to regulate commerce does not, in all cases, prevent the States, in the exercise of this power, from interfering with interstate commerce. In some cases it may be exercised to the extent of directly interfering with commerce between the States; as, for instance, a State may enact sanitary laws, and, for the purpose of self-protection, establish quarantine and reasonable inspection regulations, and prevent persons and animals having contagious

or infectious diseases from entering the State. In many cases a State, through her Legislature, in the exercise of the police power, may enact laws which merely affect or influence, but do not regulate or control, interstate commerce. As an illustration, she may, within her boundaries, require trains to stop at railroad crossings, at draw bridges, and require the speed of trains to be reduced when running through incorporated towns and cities; may regulate the speed of railroad trains; and may require railroad companies to place guards at bridges and other points of danger, notwithstanding the railroad affected may run through more than one State, or connect with railroads operated in other States, and may be engaged in transporting freight from one State to another. *Railroad Co. v. Husen, 95 U. S., 465; Chicago & Alton R. Co. v. Pierson, 12 Am. & Eng. R. Cas., 156.*

In *Munn v. Illinois, 94 U. S., 113,* the State of Illinois undertook, by statute, to regulate warehouses in that State. The court held she could do so, in the exercise of her police power, notwithstanding they were used as instruments by those engaged in the interstate, as well as in State commerce. The court said: "We come now to consider the effect upon this statute of the power of Congress to regulate commerce. It was very properly said in case of *State Tax on Railway Gross Receipts, 15 Wall., 293,* that 'it is not everything that affects commerce that amounts to a regulation of it within the meaning of the Constitution.' The warehouses of these plaintiffs in error are situated, and their business carried on exclusively, within the limits of the State of Illinois. They are used as instruments by those engaged in interstate commerce, but they are no more necessarily a part of commerce itself than the dray or cart by which, but for them, grain would be transferred from one railroad station to another. Incidentally they may become connected with interstate commerce, but not necessarily so."

In *Railroad Co. v. Fuller, 17 Wall., 567*, Mr. Justice SWAYNE, in delivering the opinion of the court, said: "The Constitution gives to Congress the power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes. The statute complained of provides:

"That each railroad company shall, in the month of September, annually, fix its rates for the transportation of passengers and of freight of different kinds.

"That it shall cause a printed copy of such rates to be put up at all its stations and depots, and cause a copy to remain posted during the year:

"That a failure to fulfil these requirements, or the *charging a higher rate than is posted*, shall subject the offending company to the payment of the penalty prescribed.

"In all other respects there is no other interference. No other constraint is imposed. Except in these particulars the company may exercise all its faculties as it shall deem proper. No discrimination is made between local and interstate freights, and no attempt is made to control the rates that may be charged  It is only required that the rates shall be fixed, made public, and honestly adhered to. In this there is nothing unreasonable or onerous. The public welfare is promoted without wrong or injury to the company. The statute was doubtless deemed to be called for by the interests of the community to be affected by it, and it rests on a solid foundation of reason and justice.

"It is not in the sense of the Constitution, in any wise a regulation of commerce.. It is a police regulation, and as such forms ' a portion of the immense mass of legislation which embraces everything within the territory of a State not surrendered to the general government, all of which can be most advantageously exercised by the States themselves.' "

The act in question does not undertake to regulate commerce between States. It imposes no restriction upon the introduction or the transportation of any article of commerce whatever. It does not undertake to regulate the charges for transportation, but simply undertakes to enforce the prompt delivery of all freight, goods, wares and merchandise, of every character, upon arrival at its place of destination in this State, and no where else, upon the payment or tender of payment of the freight charges due, as shown by the bill of lading. It does not go to the extent of the statute considered in *Railroad Co. v. Fuller, supra.* In that case the statute subjected the railroad company to a penalty for the charging of a higher rate than was posted. We cannot see how it can interfere with or affect interstate commerce, and think it is constitutional and valid.

It is contended that appellant is not liable in damages, under the act, because the bill of lading fails to give the weight of the meat. The object of the act is to compel railroad companies to deliver freight after arrival upon payment or tender of payment of charges. Because the weight of the meat was not stated in the bill of lading the appellant was not relieved of the duty to deliver, promptly, upon payment or tender of payment of the freight charges. It was its duty to have weighed the meat, without unreasonable delay. That was the only way in which the amount of the freight could have been ascertained. The sum to be paid for transportation was sufficiently specified in the bill of lading to enable all parties to ascertain what the freight charges were. This is the only object of the act in requiring the amount to be paid to be spcified in the bill of lading. The sum to be paid was, therefore, sufficiently specified in the bill of lading to accomplish the object of the act in that respect, and render appellant liable in damages for failure to deliver upon payment or tender of payment of the amount due for transportation.

We find no error in the instructions of the trial court pre-

judicial to appellant. All questions of fact were fairly submitted to the jury. There was evidence to sustain the verdict.

Judgment affirmed.