# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* WILLIAM H. FORMOSA, APPELLANT.

*Life insurance — chapter 401, Laws of 1887, forbidding discrimination in the matter of premiums, etc., is not unconstitutional — proof of the incorporation of a foreign insurance company — charge to the jury as to good character — incorrect statement of the law by the judge, not excepted to.*

Chapter 401 of the Laws of 1890, which forbids life insurance companies doing business in the State of New York from making any discrimination in favor of individuals of the same class and the same expectation of life, either in the amount of premium charged or in any return of premium, dividends or other advantages, and which also forbids an agent to offer any inducement of such a nature to an insurer, is not unconstitutional.

An act which is general and uniform in its operation upon all persons coming within the class to which it applies is not special legislation.

Upon the trial of an agent of a foreign insurance corporation, charged with having violated this statute, the articles of its incorporation were not proven, but no objection was raised at the trial upon that ground. The policy was put in evidence, and the agent of the company testified to the transaction.

*Held,* that the court would not, upon appeal, reverse the judgment upon the ground that there was no proof of the incorporation of the company.

Where, taking the charge as a whole, it appears that the jury must have understood the court to instruct them, that if they were satisfied from the evidence that the defendant was guilty of the crime charged his previous good character would not protect him, there is no error.

The policy of insurance in question was delivered to the jury to inspect, the court at the same time saying that under this statute there were two phases in which there might be a violation thereof. In fact, there was but one phase, but no exception was taken to this statement of the court.

*Held,* that as it was proper to submit the policy to the jury the attendant remarks of the court, not excepted to, were not a good ground for a reversal.

APPEAL by the defendant William H. Formosa from a judgment, rendered in the Monroe County Court of Sessions on the 20th day of April, 1891, convicting him of unlawfully paying and allowing a rebate of premiums as an inducement to Orth C. Graves to insure his life; also from an order, entered in the clerk's office of said county on the 21st day of April, 1891, overruling a demurrer to the indictment herein; also from an order, entered in said clerk's office on the last-mentioned day, denying the defendant's motion to set aside the verdict herein and to grant a new trial upon the minutes of the court, and also from an order, entered in said clerk's office

on said last-mentioned day, denying the defendant's motion in arrest of judgment herein.

The defendant was sentenced to pay a fine of fifty dollars and in default of payment to be imprisoned in the Monroe county penitentiary not to exceed fifty days.

*W. H. Davis*, for the appellant.

*George A. Benton*, district attorney, for the respondent.

Lewis, J.:

The defendant was indicted October 30, 1890, for the crime of violating chapter 401 of the Laws of 1890, which reads as follows:

" Section 1. Life insurance companies doing business in this State shall not make any discrimination in favor of individuals of the same class and of the same expectation of life, either in the amount of premium charged or any return of premium, dividends or other advantages, and no agent of any such insurance company shall make any contract for insurance, or agreement as to such contract of insurance, other than that which is plainly expressed in the policy ssued, nor shall any such company or agent pay or allow, or offer to pay or allow, as inducement to any person to insure, any rebates of premium or any special favor or advantage whatever in the dividends to accrue thereon, or any inducement whatever not specified in the policy." Section 3 of the act makes the violation of it a misdemeanor.

The defendant interposed a demurrer to the indictment on several grounds mentioned in the demurrer. The indictment seems to follow the language of the statute, and sufficiently describes the crime charged; and as the appellant does not, in his brief, urge this question, we assume that he is satisfied that the decision of the court was correct.

The appellant makes two points upon which he relies for the reversal of the judgment; first, that the judgment should be reversed, because there is no evidence that the National Life Insurance Company of Montpelier, Vermont, is a corporation as charged in the indictment.

The indictment charged that the company was a corporation duly organized under the laws of the State of Vermont, and legally doing

business in the State of New York as a life insurance company. The articles of incorporation of the company were not proven, and no question seems to have been raised upon the trial as to the fact that such a corporation existed. There was proof that the defendant assumed to act as its agent. He caused to be delivered to the insured a policy purporting to be issued by the National Life Insurance Company of Montpelier, Vermont. The policy was indorsed "William H. Formosa, General Agent National Life Insurance Company of Montpelier, Vermont, 17 and 18 Osborne Block, Rochester, N. Y." He testified that he had been acting as the agent of " Our Company," and then went on to explain the transaction with the insured in respect to the policy in question. No other policy issued by any other company was proven. The People offered in evidence a policy of insurance which purported to be issued by the defendant as agent of the company. Graves, the person insured, testified that the policy was delivered to him by the defendant. By issuing the policy he affirmed that the company existed and was doing business in the State of New York, and that he was its duly authorized agent; and not having raised the question upon the trial, we think it must be held to have been sufficiently proven.

The appellant contends that the law under which the defendant was convicted is unconstitutional, being repugnant to the clause of the Constitution which secures equality of rights to all of the people of the State, and protection against proscription and disparagement of their persons, their property and their employment, and impairs the obligation of contracts.

The act attempts to regulate and control dealings between life insurance companies, their agents and the persons insured by them. It provides that the company shall not make any discrimination in favor of individuals of the same class and of the same expectation of life, but shall charge the same premium for insuring the lives of such persons.

The business of life insurance has become so general, such a large part of the public are interested in one way and another with the success and permanency of the companies, if carefully and properly managed they are such an important factor in the affairs of the world, that it may be said that the public generally are interested in their welfare.

It has become a matter of common notoriety and knowledge that in the sharp competition among the agents of the different companies large inducements in the way of rebates of premium and special favors and advantages are extended to persons to induce them to insure. The agents are compensated for their services in procuring the policies by a percentage of the premiums paid by the insured.

The companies in their strife for business pay large percentages of the premiums to their agents to encourage them to vigilance and industry in procuring applications for policies with the expectation and understanding that the agents will offer inducements in the way of rebates of premiums. There was evidence in this case showing that Formosa's percentage upon the policy to Graves was sixty-five per cent of the premium. The result of this strife for business was disastrous to the companies, resulting in serious losses to the beneficiaries named in the policies, and hence the legislature passed the act of 1890, with a view of regulating this important branch of the business of the country. The act should be held constitutional unless it is seen to plainly violate some provision of the Constitution. Similar acts have been passed by the legislatures of the different States and have been held by the courts to be valid.

The act of 1888, fixing the maximum charge for elevating grain and making its violation a misdemeanor, was held by the Court of Appeals not to be violative of the constitutional guaranty protecting private property, and was held to be a legitimate exercise of the police power of the State over a business affecting the public generally. (*The People* v. *Budd*, 117 N. Y., 1.) In *Little Rock and Fort Smith Railroad Company* v. *Hanniford* (49 Ark., 291), the court held as valid the Arkansas act of 1885, prohibiting any railroad company in the State from charging a greater sum for the transportation of freight than is specified in the bill of lading and imposing a penalty for a violation of the act. The court said : "This act being general and uniform in its operation upon all persons coming within the class to which it applies, it does not come within that special legislation prohibited by the Constitution. For it applies to and embraces all persons 'who are or who may come into certain situations and circumstances,' and is 'general and uniform, not because it operates upon every person in the State, for it does not, but because

every person who is brought within the relations and circumstances provided for is affected by the law'."

The interstate commerce act of 1887 regulates the transportation of freight by common carriers, and prohibits making special rates, rebates, drawback or other device, and prohibits receiving from any person or persons a greater compensation for any service rendered or to be rendered in the transportation of persons or property, subject to the provisions of the act, than they charge, demand, collect or receive from any other person or persons for doing a like and contemporary service in the transportation of property under substantially the same circumstances and conditions. This act has been held to be valid.

If the legislature has the power to regulate the charges for elevating grain or the transportation of passengers and freight, it is difficult to see any reason why the business of insurance companies may not be in like manner regulated. No injustice is done by this act to any insurance company, or agent thereof, who desires to do a legitimate and proper business. It does prohibit them from making unjust discriminations amongst individuals of the same class, and of the same expectation of life insured by them. It seems to be a wholesome and proper act, and not in violation of any provision of the Constitution.

The appellant claims that the charge of the court upon the question of good character was erroneous, and complains of the following statement of the court to the jury:

"It is sufficient for your consideration of the case that it is the law of this State, and, if it is the law, it is to be enforced. If it has been violated, you are to bring in a verdict in accordance with the facts, and it is not your province nor your privilege to override the plain spirit and letter of the law and say, because you think a man has a respectable character, and respectable connections and standing in the community, that it shall shield him from the consequences of a crime, when, perhaps, the same considerations might not occur to you in behalf of a man not so respected or vouched for by his fellows. The law is no respecter of persons. It is no excuse to say that a man has a good character, and yet it would be foolish to say that such a question has no weight, because it is a question of importance to know as bearing upon whether a defendant would

be likely to tell the truth or untruth in the matter. It is important, not as to whether he committed the crime, but upon the question whether it is likely the story he tells is a true one, and convinces you that no crime has been committed. It is the same with the testimony of the gentlemen called to vouch for the defendant's good character."

No exception was taken to any part of the charge of the court, and we are not able to see that the jury could have been misled by the remark of the judge that the defendant's character was not important upon the question as to whether he committed the crime.

Taking the whole charge together, the jury must have understood the court to mean that, if they were satisfied from the evidence that the defendant was guilty of the crime charged in the indictment, that his previous good character should not be allowed to shield him.

At the close of the charge the district attorney asked the court "to allow the jury to take the policy in view of the phase of the law, 'that the terms of the contract cannot be changed.'"

The court remarked to the jury: "You will observe that there are two phases of the law under which there will be a violation. First, that no different contract shall be made by an agent or company from that expressed by the policy or contract; second, that no agent shall offer any inducement not set forth in the policy or contract. So you may take it (the policy) to determine what phase of the law has been violated." This is complained of by the defendant. The court certainly was unfortunate in the selection of language in this part of the charge.

Section 1 of the act in question, first, prohibits any discrimination by insurance companies in favor of individuals of the same class and of the same expectation of life, either in the amount of premium charged or in return of premiums, dividends or other advantages, and prohibits any agent from making any contract different from that expressed in the policy; and further provides that no company nor its agent shall offer to pay or allow, as an inducement to insure, any rebates of premium or any special favors, etc.

The desire, evidently, of the district attorney in making the request to the court to have the policy delivered to the jury was to enable the jury to see what the terms of the contract were. It was proper that they should be permitted to examine it, and while there

Fifth Department, October Term, 1891

were not "two phases of the law under which there will be a. violation," and the charge was not correct in that respect, the defendant made no request to the court to correct that part of its charge, neither did he take any exception.

The evidence that the defendant was guilty of violating the statute being ample, we do not see how he was prejudiced by this portion of the charge.

There was sufficient evidence to sustain the verdict. All questions of fact were fairly submitted to the jury, and we find no error in the instructions of the trial court prejudicial to the appellant.

The judgment of conviction appealed from should be affirmed, and the proceedings remitted to the Court of Sessions of Monroe county with directions to proceed thereon.

Dwight, P. J., and Macomber, J., concurred.

Judgment and conviction affirmed, and case remitted to the Court of Sessions of Monroe county to proceed thereon.