## St. Louis, Iron Mountain & Southern Railway Company v. Edwards.

### Opinion delivered March 21, 1910.

1. Interstate commerce—state's power to regulate.—Where Congress or the Interstate Commerce Commission has prescribed regulations upon a subject relating to interstate commerce, the same are exclusive; but where they have not done so, a State may enforce regulations which do not directly burden such commerce. (Page 395.)

2. Interstate commerce—demurrage statute.—The demurrage statute (act of April 19, 1907) is not invalid, so far as it applies to interstate commerce, but will be enforced as to interstate business, in the absence of any regulation upon that subject either by Congress or by the Interstate Commerce Commission. (Page 398.)

3. Circuit court—jurisdiction.—The circuit court has no jurisdiction of an action for the recovery from a railroad company of an overcharge of ten dollars for car service, as the cause of action is not to recover damages to personal property nor to recover a penalty. (Page 399.)

Appeal from Faulkner Circuit Court; *Eugene Lankford,* Judge; reversed.

*Lovick P. Miles* and *Thomas B. Pryor,* for appellant.

1. The act is invalid as to interstate shipments. 89 Ark. 468; 76 Ark. 82; 204 U. S. 553.

2. The court was without jurisdiction of the amount sued for in the second count of the complaint.

*R. W. Robins,* for appellee.

The act imposes no burden upon an interstate shipment. It is a mere police regulation, which applies to a shipment after it has arrived at its destination within the State. 7 L. R. A. 295; 32 Fed. 849. But, even though a State statute does incidentally affect interstate commerce, if it regulates a matter upon which Congress has failed to legislate, and imposes no unreasonable burden upon traffic between the States, the statute will be sustained. 77 Ark. 482; 15 L. R. A. (N. S.) 733; 211 U. S. 611.

McCulloch, C. J. This is an action to recover a penalty under the act of April 19, 1907, known as the demurrage statute. We passed on the validity of that statute, and upheld it in *Oliver v. Chicago, R. I. & P. Ry. Co.,* 89 Ark. 466. In that case the penalty was imposed for failure to furnish cars on demand for

a shipment of freight. In the present case a penalty is sought to be recovered for failure to give notice of the arrival of a carload of grain at its destination in this State, the same having been shipped from a point outside of the State. It was an interstate shipment, and the question presented is whether or not the statute can be applied. In the Oliver case an intrastate shipment was involved, and we found it unnecessary to decide whether or not the statute applied to a failure to furnish cars for an interstate shipment.

The section of the statute bearing on the present controversy reads as follows: "Sec. 3. Railroad companies shall, within twenty-four hours after the arrival of shipments, give notice, by mail or otherwise, to consignee of the arrival of shipments, together with the weight and amount of freight charges due thereof; and where goods or freight in carload quantities arrive, such notices shall contain also identifying numbers, letters and initials of the car or cars, and, if transferred in transit, the number and initials of the car in which originally shipped. Any railroad company failing to give such notice shall forfeit and pay to the shipper, or other party whose interest is affected, the sum of five dollars per car per day, or fraction of a day's delay, on all carload shipments, and one cent per hundred pounds per day, or fraction thereof, on freight in less than carloads, with a minimum charge of five cents for any one package, after the expiration of the said twenty-four hours; provided, that not more than five dollars per day is charged for any one consignment not in excess of a carload."

There are other sections of the statute imposing demurrage charges on consignees for failure to remove freight, thus making the burden of the whole statute reciprocal.

It is contended that the demurrage charge is a burden on interstate commerce, which cannot be imposed by State legislation, and that the statute is to that extent void. We have not been able to discover any attempt on the part of the Interstate Commerce Commission to fix or regulate reciprocal demurrage, and counsel in the case do not call our attention to any. In fact, the commission, in an opinion delivered in 1907 (12 I. C. C. 61), disclaims the existence of any such power in the commission. That opinion was based on a claim made by a shipper

on a shipment made prior to the enactment in 1906 of the Hepburn amendment, which was in force at the time of the decision; but we understand the opinion to relate to the powers of the commission under the Hepburn amendment. The text writers on this subject seems to so construe that opinion. 1 Drinker on Interstate Commerce Commission Act, § 277.

Whether the Interstate Commerce Act of Congress, or any of its several amendments, do confer such power on the commission we need not further inquire, as it is sufficient for the purpose of determining the question before us that the power has not been exercised, even if it has ever been conferred. Mr. Justice Brewer, speaking for the Supreme Court of the United States in the recent case of *Missouri Pac. Ry. Co.* v. *Larabee Mills,* 211 U. S. 612, said: "The fact that Congress has intrusted power to that commission does not, in the absence of action by it, change the rule which existed prior to the creation of the commission. Congress could always regulate interstate commerce, and could make specific provisions in reference thereto, and yet this has not been held to interfere with the power of the State in these incidental matters. A mere delegation by Congress to the commission of a like power has no greater effect, and does not of itself disturb the authority of the State. It is not contended that the commission has taken any action in respect to the particular matters involved. It may never do so, and no one can in advance anticipate what it will do when it acts. Until then the authority of the State in merely incidental matters remains undisturbed."

That case involved an effort on the part of the State to control or prevent discrimination between shippers in the matter of switching or delivering cars for the shipment of goods. Answering the contention that it directly affected interstate commerce transactions, the learned justice said: "This common-law duty the State, in a case like the present, may, at least in the absence of congressional action, compel a carrier to discharge."

In *Chicago, M. & St. P. Ry. Co.* v. *Solan,* 169 U. S. 133, a statute of Iowa was upheld providing that "no contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from liability of

a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into;" and Mr. Justice Gray, in delivering the opinion of the court, said: "The rules prescribed for the construction or rail-roads, and for their management and operation, designed to protect persons and property, otherwise endangered by their use, are strictly within the scope of the local law. They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits."

In *Western Union Tel. Co.* v. *James*, 162 U. S. 650, the court, passing on a statute of Georgia imposing a penalty of $100 on telegraph companies for failure to transmit and deliver telegrams with diligence and impartiality, held that the statute was valid, and did not burden or interfere with interstate commerce. Speaking through Mr. Justice Peckham, the court said: "The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and it is in no wise obstructive of its duty as a telegraph company. It imposes a penalty for the purpose of enforcing this general duty of the company. The direction that the delivery of the message shall be made with impartiality and good faith and with due diligence is not an addition to the duty which it would owe in the absence of such a statute. Can it be said that the imposition of a penalty for the violation of a duty which the company owed by the general laws of the land is a regulation of or an obstruction to interstate commerce within the meaning of that clause of the Federal Constitution under discussion? We think not."

We understand the rule established by the various decisions of the Supreme Court of the United States to be that where Congress, or the commission created for that purpose, prescribes regulations upon a particular subject relating to interstate commerce, the same are exclusive in their operation, and the States

no longer have power to make regulations on that subject; but that, until Congress or the commission has acted upon a particular matter of regulation, a State may enforce its regulations, which do not directly burden interstate commerce. There being no regulation, as we have seen, either by Congress or by the Interstate Commerce Commission on the particular subject now under consideration—that is, of reciprocal demurrage —the test as to the validity of the State regulation is whether it is a direct burden upon or is in aid of commerce.

Aside from any statute on the subject, the duty rests upon a public carrier, as a part of its contract, to make delivery to the consignee of the freight intrusted to it for transportation, and "every delivery must be made to the right person at a reasonable time, at the proper place and in the proper manner." 2 Hutchinson on Carriers, § 664. The authorities are in conflict on the question whether, in the absence of a statute, a carrier by rail is required to give notice to the consignee of the arrival of freight; but it cannot be doubted that such a requirement, in aid of a speedy delivery of freight, is a reasonable regulation and may lawfully be imposed. It is in no sense a burden on commerce, but is in aid of it. *Bagg* v. *Wilmington, C. & A. Rd. Co.*, 109 N. C. 279. It does not in any degree affect the contract of carriage, as did the Georgia statute which was condemned by the Supreme Court of the United States in *Central of Georgia Ry. Co.* v. *Murphey*, 196 U. S. 194. The statute thus condemned provided that it should be the duty of the initial or any connecting carrier, within thirty days after application made by the shipper, consignee or their assigns, to trace lost, damaged or destroyed freight and inform said applicant when, where, and by which carrier said freight was lost, damaged or destroyed, etc., and that on failure to do so said carrier should be liable for the value of the freight lost, damaged or destroyed as if the same had occurred on its line.

In a very recent case, however, the Supreme Court of the United States, distinguishing it from the Murphey case, upheld a similar statute except that it applied only to carriers on whose lines property was when lost or damaged. The court held that the statute was not an unlawful interference with interstate

commerce. *Atlantic Coast Line Railroad Co.* v. *Mazursky,* 216 U. S. 122.

In *Little Rock & Fort Smith Ry. Co.* v. *Hanniford,* 49 Ark. 291, this court upheld a statute which made it unlawful for railroad companies to endeavor to collect from the owner or consignee a greater sum than that specified in the bill of lading, and prescribed a penalty for a refusal to deliver freight upon payment of the charges specified in the bill of lading. The court held that the statute was for the purpose of requiring the prompt delivery of freight, and was in aid of, and not a burden upon, commerce. It is true that in the later case of *Spratlin* v. *St. Louis S. W. Ry. Co.,* 76 Ark. 82, following the decision of the Supreme Court of the United States in *Gulf, C. & S. F. Ry. Co.* v. *Heffley,* 158 U. S. 98, we held that the statute above referred to had been abrogated or suspended by the conflicting act of Congress on that particular subject. But that does not lessen the force of the Hanniford case in so far as it holds that the statute was in aid of commerce.

In *Arkansas So. Ry. Co.* v. *German Nat. Bank,* 77 Ark. 482, this court held that the statute imposing a penalty on railroads for delivering freight except on surrender of bill of lading is not a burden on interstate commerce, but is in aid thereof, and is enforcible, in the absence of Congressional legislation inconsistent therewith.

We conclude that the statute under consideration is valid and enforcible.

In a separate paragraph of the complaint another cause of action is set forth for the recovery of $10, alleged to have been unlawfully charged for alleged car service, which was paid under protest, and a recovery of that amount is sought. The court overruled a demurrer and rendered judgment for the amount, as well as for the demurrage. The amount claimed is not within the jurisdiction of the circuit court, as the cause of action set forth in that paragraph is not to recover damages to personal property nor to recover a penalty. The judgment of the circuit court is affirmed except as to the $10 recovered under the last paragraph of the complaint, and as to that the judgment is reversed and the cause dismissed.

FRAUENTHAL, J., disqualified.