## Hazelrigg, Treasurer v. Hazelrigg.

(Decided March 24, 1916.)

### Appeal from Montgomery Circuit Court.

1. Statutes—Amendment—Revision and Codification—Section 51 Constitution.—An act of the legislature attempting to amend an existing law, that does not re-enact and publish at length as amended the portion of the law amended, violates section 51 of the constitution, and is void.

2. Statutes—Title.—Under section 51 of the constitution, the title is an essential part of an act, without which the act is void.

3. Statutes—Section 51 Constitution.—Subsections 2, 3 and 4 of Chapter 20 of 1914 Acts, which are subsections 1, 2 and 3 of section 1851a of the statutes, being amendatory of an existing law, and failing to re-enact and publish at length as amended such sections of the existing law as they are intended to amend, violate section 51 of the constitution and are void.

4. Statutes—Commission Form of Government.—Subsections 1, 2 and 3 of section 1851a and section 1847 of the statutes do not contravene section 144 of the constitution in providing that counties having adopted the commission form of government shall be divided into districts and one of the three commissioners elected by the voters of the whole county shall reside in each of said districts.

JOHN G. WINN for appellant.

ROBERT H. WINN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In 1913, at the regular fall election, Montgomery county voted in favor of a commission form of government under section 1847 of the statutes, which is a part of the law enacted to carry into effect section 144 of the constitution. Under this law commissioners would have been elected at the election in 1917 to take office in January, 1918, and with the county judge would have constituted the fiscal court for said county thereafter during their four years' term of office.

At the 1914 session of the legislature the following act was passed, which is chapter 20 of said Session Acts and section 1851a of the 1915 Carroll Statutes:

"An Act to amend and re-enact Article 1, Chapter 52 of the Kentucky Statutes; edition of 1909, being sections 1833 to 1851, inclusive, entitled 'Fiscal Courts,' as amended by ar act entitled 'An Act to amend Section

1850 of the Kentucky Statutes, Edition of 1909,' being Chapter 116 of Acts of 1910.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"1.    That section 1849 be and the same is hereby amended by striking out of the latter part of said section, beginning with the words 'provided, however,' etc., so that said section as amended shall read as follows:

"Section 1849.    Term of Office of Commissioner.— The commissioners shall take the oath of office and enter upon the discharge of their duties on the first Monday in January after their election and continue in office until their successors are elected and qualified, as hereinafter provided.

"2.    That said article 1, of chapter 52, be and the same is hereby amended by adding thereto the following provisions, to-wit:

"In counties containing a city of the fourth class which have voted in favor of the fiscal court of the county being composed of three commissioners to be elected from the county at large and the county judge, and in which commissioners have not been elected, there shall be elected at the regular election held in November, 1915, three commissioners from the county at large who shall serve for a period of two years.    At the expiration of two years from the time when said commissioners shall have been elected and at the general election for county officers to be held at that time, and every four years thereafter, there shall be elected three commissioners for a term of four years.

"Provided, that the county judge of any such counties shall, within thirty days after this act takes effect, divide said county into three districts as nearly equal in population as possible, and all appointments and elections of commissioners shall be made from said districts so that the fiscal court shall always be composed of the county judge and one commissioner from each of the said three districts.    In all elections of commissioners they shall be voted for by the voters of the county at large.    Each commissioner shall receive as full compensation for his services the sum of two hundred and no 100 ($200.00) dollars, per annum, payable quarterly.

"3.    That said article 1, of chapter 52, be and the same is hereby amended by adding thereto the following provisions, to-wit:

"All nominations for commissioners to compose the fiscal court shall be made by secret ballot at the general primary election to be held next preceding the general election at which such commissioners are to be elected, and subject to all the provisions of the general primary law. Each legal voter at said election may vote for one candidate in each district by making a cross in the square opposite the name of each candidate for whom he wishes to vote, the candidates to be arranged upon the ballot by districts. The candidates in number equal to the number of candidates to be elected at the next ensuing general election, who shall receive the highest number of votes with regard to districts as herein provided, shall be declared nominated:

"4. That said article 1, of chapter 52, be and the same is hereby amended by adding thereto the following provisions, to-wit:

"All elections for commissioner to compose the fiscal court of any county containing a city of the fourth class shall be by secret ballot, which ballot shall be prepared, furnished and cast in accordance with the provisions of the general election law, containing the name of those nominated for the office of commissioner at the preceding general primary election. The candidate or candidates in number equal to the number of commissioners to be chosen who shall receive the highest number of votes with regard to districts as herein provided, shall be declared elected, one commissioner to come from each district.

"The provisions of this act shall not apply to counties not containing a city of the fourth class.

"5. Article 1, chapter 52, of the Kentucky Statutes, Edition 1909, including chapter 116, Acts of 1910, and each section thereof which is not in conflict with the provisions of this act, are hereby re-enacted as herein amended and all acts or parts of acts in conflict herewith are hereby repealed.

"6. If any section of this bill shall be held to be unconstitutional that fact shall not affect any other section of the act, it being the intention of the General Assembly in enacting this bill to enact each section separately, and if any provision or exception contained in any section of this bill shall be declared unconstitutional, that fact shall not affect the remaining portion of said section, it being the intention of the General Assembly to enact

each section of said bill and each provision and exception thereto separately.''

This act applies to Montgomery county, as it contains a city of the fourth class, and provided for the election of commissioners at the regular election in 1915, to take office in January, 1916, for a two years' term, thus enabling this county and others of the same class to estab-lish a commission form of government two years sooner than they would have been able to do except for the passage of this act.

The commissioners thus elected qualified in January, 1916, and the fiscal court, consisting of the county judge and the three commissioners elected, had approved and ordered paid by the county treasurer, at the time this suit was filed, claims against the county amounting to about $1,500.00, of which the county treasurer had paid about $300.00.

Appellee, as a citizen and taxpayer of said county, brought this suit against appellant, the county treasurer, seeking to enjoin him from paying out of the county funds warrants allowed and approved by the fiscal court as thus constituted, upon the ground that the act of 1914 above set out is unconstitutional and void because violative of sections 51 and 144 of the constitution.

Section 51 of the constitution is as follows:

''No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended, or conferred, shall be re-enacted and. published at length.''

The act of 1914 states in its title and in the body of the act that its purpose is to amend and re-enact sections 1833 to 1851, inclusive, of the statutes, but it does not re-enact or publish at length the law it seeks to amend, except in sub-section one, which amends section 1849 of the statutes. It results, therefore, if said act is in fact an amendment of the existing law, as it says it is, that the legislature, in the enactment of this act, except in sub-section one, entirely disregarded the plain provisions of this section of the constitution.

It is argued, however, by counsel for appellant that, although the act does state that it is an amendment, it .is in reality new and independent legislation, and as such

should be upheld. If the language of the act is not in itself a sufficient answer to this contention, it is clearly refuted by the fact that the act does nothing but change and amend the existing law with reference to the election of particular officers, the manner of electing whom had been fully provided for in the very law this act attempted to change; but it is unnecessary to discuss this question because if we eliminate the statements in the act that it is amendatory of an existing law, as we are urged to do in order to uphold it, we take away from it the only title it has and leave it without any title whatever, which renders it violative of the first part of this same section of the constitution requiring every act to have a title proclaiming the subject to which it relates.

The title is an essential part of an act, an imperative condition to its validity and the controlling part of the law to which it applies. Cooley's Constitutional Limitations, 7th Ed. 202; Endlich Interpretation of Statutes, sec. 59; Sutherland Statutory Construction, Sec. 211; Commonwealth v. Barney, 115 Ky. 479.

And this court has held that section 51 of the constitution is mandatory as to the manner of amending existing laws, and its provisions must be substantially complied with. Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255; Hickman v. Kimbley, 161 Ky. 652; and Hall v. Clay, Commissioner of Insurance, 162 Ky. 197. The provisions of this section of the Constitution not having been complied with in the enactment of this act, whether considered as an amendment or new legislation, it results that same is unconstitutional and void, except however if treated as an amendment, sub-section one thereof amending section 1849 of the statutes, is valid because it re-enacts and publishes at length said section as amended. Commonwealth v. Goldberg, 167 Ky. 96. Being of the opinion that this act, chapter 20 of the 1914 Acts, is an amendment and not new legislation, we hold that sections 2, 3 and 4 thereof, section 1851a of the statutes, are unconstitutional and void.

2. So much of section 144 of the constitution as is involved here is as follows: "A county may have three commissioners to be elected from the county at large who together with the judge of the county court shall constitute the fiscal court."

Sub-section 2 of the act of 1914 provides "that the county judge of any such counties shall within thirty days after this act takes effect, divide said county into

three districts as nearly equal in population as possible and all appointments and elections of commissioners shall be made from said districts, so that the fiscal court shall always be composed of the county judge and one commissioner from each of the said three districts. In all elections of commissioners they shall be voted for by the voters of the county at large.''

The question here is, does this provision for the election of commissioners from districts in the county by the voters of the whole county violate the provision of section 144 of the constitution that the commissioner shall be elected from the county at large? In other words, are the commissioners elected from the county at large when required to be residents of particular districts within the county, but to be elected by the voters from the county at large?

This same provision is found in the old law, section 1847 of the statutes, which was enacted October 17, 1892, at the first session of the legislature held after the adoption of the present constitution, and if it should be determined that the act of 1914 is unconstitutional because of this provision, it, of course, results that so much of the old law as provides for the election of commissioners by the voters of the county at large from the several districts into which the county is divided is also unconstitutional.

It must be conceded that at first blush the very language of the constitution that the commissioners shall be elected from the county at large seems to indicate that it is the commissioners that must come from the county at large and not the voters, because it says ''the commissioners shall be elected from the county at large,'' and not that they shall be elected by the voters from the county at large; but that this proposition is not so simple as it first appears becomes apparent when an analysis of the sentence is undertaken, for commissioners cannot be elected from the county at large except by the voters from the whole county; and, if elected from any place, even a particular place within the county by the voters of the whole county, can they be said not to have been elected from the county at large?

Even in an attempt to answer this qustion as an original proposition, we find ourselves unable to agree that a correct interpretation would have prohibited the qualification requiring the commissioners to be residents of

different districts in the county, but elected by the voters of the whole county, so it would seem that such an interpretation is not the only construction of which the constitutional provision is susceptible, and that its soundness is at least doubtful; and, if doubtful, it ought not now to be adopted by this court, because of the fact that at the first session of the legislature after its adoption, the legislature put a different interpretation upon that provision and enacted into law its interpretation thereof, which has been recognized as the law for twenty-four years, and followed by many counties in the state in the creation of fiscal courts, and may have influenced or even controlled the voters in some counties in adopting a commission form of government. For we can readily believe that many persons might want a commission form of government if the commissioners were selected from different sections of the county by the voters of the whole county, but would not want it if all the commissioners could be selected from one house.

While it is a well settled rule of constitutional construction that contemporaneous legislative constructions are not binding upon the courts, and will not be adhered to if inconsistent with the plain meaning and intention of a constitutional provision, they are nevertheless entitled to some weight, and should not be departed from unless clearly erroneous, especially when they are of long standing, and have been adopted and followed for many years in the administration of the law. Although section 1847 of the statutes has been in effect for nearly twenty-four years, and presumably has been in force for many years in numerous counties of the state, so far as we have been able to find its constitutionality has never been questioned or passed upon, and if it should now be declared unconstitutional the organization of the fiscal courts in many counties of the state will be thereby destroyed.

Therefore, we conceive that the proposition presented to us now is not so much what is the most reasonable construction of section 144 of the constitution, but rather whether or not the construction already placed upon it by the legislature in 1892 by the enactment of a law to carry it into effect, is clearly erroneous. If that interpretation is not clearly erroneous and unreasonable, but is defensible and the provision of the constitution is reasonably susceptible of that construction, we ought to adhere to rather than depart therefrom, even if we

were of the opinion that another interpretation would have been more reasonable. 8 Cyc. 737; Collins v. Henderson, 11 Bush 74; Board of Education, &c., v. Sea, 167 Ky. 772.

It seems to be agreed by counsel for both parties here, and it is no doubt true, that this provision of the constitution was inserted for the purpose of giving to any county in the state the right to choose whether the members of its fiscal court should be selected as representatives of particular districts or of the county at large; that is, whether or not it should have district magistrates or county at large commissioners. Certainly if a county has a fiscal court composed of district magistrates, they must both be residents and elected by the voters of the several districts. And any evils resulting from having the members of the fiscal court elected by and as representatives of particular districts rather than as representatives of the whole county may be avoided by either of the two following methods: (1) To have the representatives of the fiscal court elected from any part of the county, even if all from one house, by the voters of the whole county; or (2) to have them elected from different sections of the county but by and responsible to the voters of the whole county.

Which of these two plans the framers of the constitution intended we are unable with certainty to say, for either is consistent with the terms of the section and would relieve the members of the fiscal court from the criticism of being representatives of and responsible to a part rather than the whole of the county; for any member, even though required to be a resident of a particular district could be elected without a single vote from the district of his residence and would be responsible and answerable to the voters of the whole county upon whom his election depended rather than to the voters of the particular district.

We are not, therefore, able to say that the interpretation given this section by the legislature almost immediately after the adoption of the constitution is unreasonable or clearly erroneous, even though it were admitted that upon a primary investigation the language in which the constitutional provision is clothed seems more reasonably to indicate that the county should not be divided into districts for any purpose in connection with the selection of commissioners.

We have examined the constitutional debates upon this section, but find nothing that throws any light upon the question before us. Not being able to say positively that the legislative interpretation is repugnant to either the plain meaning or purposes of the provisions, we are centainly not warranted, after so many years of recognition, to depart therefrom, and we conclude that the provision of the statute requiring commissioners to be elected from different districts, but by the voters of the whole county, is not in violation of section 144 of the constitution.

However, as sections 2, 3, and 4 of chapter 20 of the Acts of 1914, section 1851a of the 1915 Carroll Statutes, are in violation of section 51 of the constitution, the same are void; and the judgment of the lower court having so declared, and having granted the relief prayed for by appellee, the same is affirmed.

The whole court, except Judge Turner, sitting.