## Board of Regents for Western Kentucky Normal School, et al. v. Engle.

(Decided April 24, 1928.)

### Appeal from Warren Circuit Court.

1. Schools and School Districts.—Real estate held by Board of Regents of state normal school is held by the board as an agency of the state, under Constitution, sec. 183, and, being property of the state, could not be sold by board unless authorized by law.

2. Statutes.—Acts 1908, c. 62, amending Acts 1906, c. 102, by reference to its title, by adding as an additional section to the 1906 act, authorizing Board of Regents of state normal school to sell real estate, but not setting out 1906 act, held void under Constitution, sec. 51.

3. Schools and School Districts.—Acts 1912, c. 100, authorizing Board of Regents of state normal school to sell real estate and apply proceeds to indebtedness "as exists" against said school held not to authorize the sale of property after enactment of Acts 1916, c. 89, providing for payment of bonds issued under act of 1912 to pay such indebtedness.

4. Statutes.—Court cannot consider act in any way where it has not yet taken effect.

G. D. MILLIKEN and STOUT & HERDMAN for appellants.

RODES & HARLIN and FORMAN & FORMAN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

On December 1, 1920, the Board of Regents of the Western Kentucky Normal School entered into a written contract with George S. Engle, by which it sold to Engle certain real estate in Bowling Green for the sum of $37,-500. Engle paid $2,500 cash, and agreed to pay $10,000 more on February 1, 1921, at which time the Board of Regents agreed to make to him a good and perfect title to the property. In November, 1925, Engle brought this suit against the Board of Regents to recover the money he had paid, alleging that he offered to pay the $10,000

on or about February 1, 1921, but the defendant was without power to convey to him a title to the property or to make the contract with him, and that the contract was void. The Board of Regents filed an answer to the petition denying certain of its allegations, but leaving uncontroverted the facts upon which the power of the Board of Regents to make the contract depends. If the Board of Regents had no power to make the contract, it was without consideration, and, if the contract was void, Engle was not bound by it, and the money was paid without consideration. The circuit court held the contract void, and the board appeals.

The property sold was a part of the real estate held by the board as an agency of the state and as a part of the state's efficient system of common schools throughout the state, as provided by section 183 of the Constitution. It was therefore the property of the state, and no agency of the state had power to sell the property of the state unless authorized by law. The Board of Regents was created by a general act of the Legislature. Its powers were defined by general law, and, as the court must take notice of such laws, the power of the Board of Regents to make the contract is simply a question of law to be decided from the acts regulating the board. The Board of Regents was created by the Act approved March 21, 1906, entitled, "An act to establish a system of state normal schools in Kentucky, etc.," Acts 1906, p. 393. This act conferred upon the Board of Regents no power to sell any property it acquired. By an act approved March 24, 1908, entitled, "An act to amend an act approved March the 21st, 1906, entitled, 'An act to establish a system of state normal schools in Kentucky,' " etc., without re-enacting the former act or setting it out in any way, the Legislature added as an additional section to the act of 1906, among other things, these words:

"Each Board of Regents may, when it regards the same to be best for its school, sell and convey any real estate or buildings now owned by it, but the proceeds arising from such sale must be reinvested in other real estate and buildings for the use of said school." Acts 1908, p. 157 (section 5).

Section 51 of the Constitution is in these words:

"No law enacted by the general assembly shall relate to more than one subject, and that shall be ex-

pressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

The act of 1908 amends the act of 1906 "by reference to its title only." It extended the provisions of that act, but so much of the act as was revised, amended, or extended was not re-enacted or published at length. In Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017, the court having this precise question before it, held the amending act void under section 51 of the Constitution. In that case the court laid down the following rule:

"When the new act purports to amend an existing act by extending, revising or amending it, and no particular section or part of it is specified, then the body of the new act must set forth the whole of the existing act as it will appear when extended, revised or amended; but if only a section or several sections of an act are extended, revised or amended, it is only necessary to specify and republish the section or sections that are extended, revised or amended."

That opinion was followed and approved in Hazlerigg v. Hazelrigg, 169 Ky. 345, 183 S. W. 933, Com. v. Bowman, 191 Ky. 647, 231 S. W. 35, and City of Paducah v. Jordan, 208 Ky. 140, 270 S. W. 720, and is the settled law of the state. Henderson Traction Co. v. City of Henderson, 178 Ky. 125, 198 S. W. 730, is not in conflict with these cases. In that case the title to the act contained these words, "And providing for the oiling of streets in the cities of the third class." The act was sustained upon this ground as stated by the court:

"Not only so, but the title of the act clearly sets forth the purpose of the act. In other words, the added section is a supplemental act, complete in itself, and does not require a reference to any other law to discover its scope or meaning."

Hunter v. City of Louisville, 199 Ky. 834, 252 S. W. 119, was decided also upon the ground that it was a new and independent act, and did not revise or extend any of the provisions of the existing law. The court is there-

fore forced to the conclusion that the act of 1908, in so far as it added additional sections to the act of 1906, increasing the powers of the board, was void; for the powers of the board were minutely defined in the original act, and so much of that act as was amended not being set out in the new act, no one who voted for the new act would understand what effect the amendment had on the old act, and to prevent this was the purpose of section 51 of the Constitution.

The board also relies on the Act approved March 15, 1912 (Acts 1912, p. 287). That act sets out in a preamble that, whereas there was conveyed to the state, for the use of this normal school, certain property, and whereas valuable buildings have been erected for the use of the school and the costs of the buildings and improvement exceed the funds in the hands of the board, and the debt is due laborers and materialmen who are not able to wait for payment of same, therefore be it enacted. The first section of the act contains these words:

"Said Board of Regents be and it is hereby empowered to sell and convey such part or parts of the said real estate either now owned as in its judgment is not necessary to the welfare of said school. Provided, that no conveyances being provided for shall become effective until approved by the Board of Sinking Fund Commissioners, which approval shall be indorsed upon said conveyance, and provided, further, that all funds realized from any sale authorized herein shall be applied to the payment of the indebtedness as exists against said Western Normal School.

"And it is also authorized and empowered to borrow a sum of money sufficient to meet and pay said deficit or debt arising by reason of the erection of said buildings and improvements and otherwise, and to execute its notes or bonds for the amount or amounts so borrowed and to secure the payment of such notes or bonds, said board is hereby authorized and empowered to execute a mortgage upon any or all of said real estate; and is further authorized and empowered to borrow said money upon such time or terms as it may deem best for said school, but the rate of interest paid upon any such loans shall not exceed six per cent. per annum, which interest shall be paid as the same falls due by the commonwealth of Kentucky."

While we think it is apparent that the words "or hereafter" are omitted after the word "now" by clerical error in enrolling the bill, and that the bill really should read "either now or hereafter owned," it is apparent from the bill as a whole that the purpose of the bill was to provide for the debt then existing. To hold that the words "as exists" mean as exists at the time of the sale or at any time would be to leave out of view entirely the preamble to the act and the reasons which plainly prompted the Legislature to enact it. By the act of 1916 (see Acts 1916, p. 636), the Legislature provided that the bonds issued under the act of 1912 should be paid by the auditor, and thus left nothing for the Board of Regents to pay. The court is clearly of the opinion that under the act of 1912 a sale of property was only authorized to pay the debt then existing, and that this power of sale did not exist after the act of 1916, which provided for the payment of this debt by the auditor out of the state funds. A large debt had accrued in 1912.

It follows that the Board of Regents were without power in 1920 to sell the property to Engle, and the court properly so held.

By supplemental briefs, our attention is called to the fact that the General Assembly in 1928 passed an act validating the action of the Board of Regents in selling property belonging to the state, but that act contained no emergency clause. It has not taken effect, and this court cannot consider it in any way, for it is not yet in effect.

Judgment affirmed.