WEBB *v.* ADAMS.

Opinion delivered December 23, 1929.

714

*John Owens, Claude A. Rankin* and *Pinnix & Pinnix,* for appellant.

*Tom Kidd,* for appellee.

KIRBY, J., (after stating the facts). The act appears, from its title indicating the purpose and its terms, to be general, providing for an optional county unit or a consolidated school system for the State, operating equally and uniformly throughout the State, but for the proviso or exception in § 14 reading: "The provisions of this act shall in no way apply to or affect Gosnell Special School District in Mississippi County, Arkansas. Provided, also, that the provisions of this bill shall not apply to Faulkner and Sharp counties."

Amendment No. 17 reads: "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts." The language of the amendment is plain and unambiguous, and its meaning clear, disclosing the intention of the people in adopting it, and dispensing with the necessity of seeking other aids for its interpretation. The restrictive provisions of the Constitution on the legislative power relative to the passage of local or special legislation, leaving its exercise to the discretion of the Legislature, had been so disregarded and abused as to create an intolerable condition. Numerous measures were enacted in all sessions of the General Assembly, general in their terms and nature, and from the operation of which from one or more of the counties of the State

were excepted, and this amendment was adopted to remedy the evil, and the power of the General Assembly to enact local or special legislation was withdrawn, the General Assembly being prohibited by its terms from passing any local or special act. The effect of excepting from the provisions and operation of the act the Gosnell Special School District and the counties of Faulkner and Sharp was to leave the law applicable only to the remainder of the State not so excepted and the law as to the excepted territory unchanged, as though act 149 of 1929 had not been enacted. *Casey* v. *Douglass,* 173 Ark. 641, 296 S. W. 705.

If two counties and a special school district can be excepted from the provisions of a law otherwise general and operative equally and uniformly throughout the whole State, there would be no reason to say that twenty-five or fifty counties or seventy-four of the seventy-five counties of the State could not be so excepted, leaving its application as a general law to but one county, abrogating by legislative determination and judicial construction the Constitutional Amendment prohibiting the Legislature from passing ''any local or special act.'' The exclusion of a single county from the operation of the law makes it local, and it cannot be both a general and a local statute. *Davis* v. *Clark,* 106 Penn. 384; *State* v. *Mullica Twp.,* 51 N. J. L. 412, 17 Atl. 941; *Miller* v. *Kister,* 68 Cal. 142, 8 Pac. 813; *Township of Lodi* v. *State,* 51 N. J. L. 402, 18 Atl. 749, 6 L. R. A. 56. The courts look to the substance and practical operation of a law in determining whether it is general, special or local, and if its operation must necessarily be special or local, it must be held to be special or local legislation, whatever may be its form. 25 R. C. L. p. 815; 1 Lewis' Sutherland, Statutory Construction, p. 359. A local law is one that applies to any subdivision or subdivisions of the State less than the whole. 3 Words & Phrases, Second Series, p. 172. A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates

some person, place or thing from those upon which, but for such separation, it would operate. *Van Cleve* v. *Passaic Valley Sewerage Cm'rs,* 71 N. J. L. 183, 58 Atl. 571, 572; *Ry.* v. *Hanniford,* 49 Ark. 291, 5 S. W. 294; *Little Rock* v. *North Little Rock,* 72 Ark. 195, 79 S. W. 785.

This act, by reason of the express provision excepting certain counties of the State arbitrarily from its operation and limiting it to the territory not excepted, becomes local or special within the meaning of the Constitutional Amendment, and was beyond the power of the Legislature to enact, and is consequently void and of no effect, and the court did not err in so holding.

The decree is affirmed.

MEHAFFY, McHANEY and BUTLER, JJ., dissenting.

BUTLER, J., (dissenting). The majority of the court has concluded that the provision in § 14 exempting a special school district in Mississippi County and the counties of Faulkner and Sharp from the provisions of bill renders the entire act void as a local bill and within the prohibition of Amendment No. 17, and has therefore decided that the act is uninforcible.

From this decision I must respectfully dissent.

The duty was cast upon the General Assembly by § 1, article 14, Constitution of 1874, to "maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction." This the State has been endeavoring to perform since the adoption of the Constitution with but indifferent success, so that today Arkansas lags behind the majority of its sister States in the point of the average education of its citizens. In some communities there were, because of greater local wealth and number of population, ample funds for educational purposes, while in others the funds for that purpose were wholly inadequate. A part of the youth of the State was being educated, a part growing up in ignorance.

An enlightened public conscience became aware that it was the duty of the richer and more favored localities to aid in the education of the children of the poorer communities, and, heeding its voice, the General Assembly of 1929 passed the law under consideration, in aid of other legislation recently passed by which it was expected that educational facilities throughout the State might become equal and uniform, and the blight of illiteracy banished from within our borders.

As gathered from the title and subject-matter of act No. 149, it was the intention of the Legislature to provide for an optional county unit or consolidated school system for the several counties of the State by popular vote. The inclusion of the proviso must have been deemed an immaterial matter, because before the law could become applicable to the counties named in the provision, a majority of the people must have given their assent. But the proviso was in direct conflict with the purpose of the act, which was to provide for an optional uniform county unit system for the conduct of the schools for the entire State. In order for the act to fail because of the proviso, this court must determine that, without the proviso, the Legislature would not have passed act No. 149.

Could it be rationally supposed that the Legislature by the enactment of the "County Unit System" was indulging in a mere vain and useless gesture, and in order that this might be the result inserted the proviso. Was it their intention to deceive and beguile the people, which, when it asked for a fish, would be given a serpent?

In any view of the case, can it be assumed that it did not intend and would not have passed the act with the proviso omitted? I say no. The history of the State, the traditions of the legislative body, the necessity for the law, the unmistakable language of the statute itself, the practically unanimous vote by which the statute was enacted, all cry out against any such assumption; but rather from all of this the conclusion is inescapable that if the Legislature, doubtless esteeming the inclusion of

the proviso unimportant, had anticipated that the proviso would have made the bill a local measure it would have declined to include it and would have passed the act without it.

It is elementary that every reasonable rule of construction must be resorted to in order to save a statute from unconstitutionality, and presumptions should be indulged in to uphold the validity of laws and not to strike them down, and where one construction would render it void and another would render it valid, the latter should be adopted. *Standard Oil Co.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753; *Rice* v. *Lonoke Road Dist.,* 142 Ark. 454, 221 S. W. 179; *State* v. *Handlin,* 100 Ark. 175, 139 S. W. 1112; *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9.

In the case of *State* v. *Jennings,* 27 Ark. 419, the rule was laid down, which has since been followed by this court, that where any particular clause is not so large or extensive in its import as the other expressions in the statute, and if from these the true legislative intent can be ascertained, the real intent of the Legislature should be given effect, and the other disregarded.

This court has consistently held that, where a part of a statute is unconstitutional, if it is apparent the Legislature would have enacted the statute without the unconstitutional provisions, such provisions will be disregarded because it is the duty of the court to indulge in every reasonable presumption in order to uphold the validity of the statute. *State* v. *Marsh,* 37 Ark. 356; *Leep* v. *Ry.,* 58 Ark. 407, 25 S. W. 75; *Pryor* v. *Murphy,* 80 Ark. 150, 96 S. W. 415; *Sallee* v. *Dalton,* 138 Ark. 549, 213 S. W. 762.

It is entirely apparent, taking into consideration the duty resting upon the Legislature to provide equal, adequate facilities for the education of the children of the State, the years it has struggled with this problem, the manifest need of the law, its comprehensive scope and unmistakable terms, the unanimity of its passage, that act 149 would have been enacted without the proviso. As

that proviso is repugnant to the remainder of the act, and its retention would render the entire act unconstitutional, it is our conclusion that the proviso is void, and the act, with the proviso rejected, a valid and constitutional enactment.

Mr. Justice MEHAFFY and Mr. Justice McHANEY concur in this dissent.

HART, C. J., (on rehearing). According to the decision in *Casey* v. *Douglas,* 173 Ark. 641, 296 S. W. 705, the clause, ''Provided also that the provisions of this bill shall not apply to Faulkner and Sharp counties,'' expressly excepts those counties from the terms of the act; and the school law as to them is left in force as it was before the passage of the act providing for an optional county unit or consolidated school system. See Acts of 1929, vol. 1, p. 754.

But it is first insisted that the act is not a local one under Amendment No. 17 to the Constitution which reads as follows:

''The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.''

Impliedly, at least, this court has uniformly held that general laws shall have uniform operation throughout the territorial limits of the State; and there are many decisions to this effect, as will be seen by the reasoning of the court in the cases heretofore decided relating to local or special laws. It has been uniformly held that the subject of the legislation, in order to be a general law, must operate uniformly upon every person or thing of a designated class throughout the territorial limits of the State. *Little Rock & Fort Smith Ry. Co.* v. *Hanniford,* 49 Ark. 291, 5 S. W. 294; *Little Rock* v. *North Little Rock,* 72 Ark. 195, 79 S. W. 785; *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 707.

In the case last cited, the court said that the difference between a general and special statute is that a gen-

eral law applies to all of a class while a special statute applies to one or two, or part of a class only.

Again, in *Farelly Lake Levee Dist.* v. *Hudson,* 169 Ark. 33, 273 S. W. 711, the court said that a general law must relate to persons and things as a class, and must operate uniformly throughout the State upon the whole subject or whole class, and must not be restricted to any particular locality within the State.

Now, if a general law must apply throughout the territorial limits of the State, the exclusion of one or more counties from its provisions makes it a local statute. This is the common and well-known difference between general and local acts.

Article 4, § 104, of the Constitution of Alabama, adopted in 1901, provides that the Legislature shall not pass a special, private or local law in certain enumerated cases. Section 110 of the same article is as follows:

"A general law within the meaning of this article is a law which applies to the whole State; a local law is a law which applies to any political subdivision or subdivisions of the State less than the whole; a special or private law within the meaning of this article is one which applies to an individual, a s s o c i a t i o n or corporation."

The framers of the Alabama Constitution define general and local laws according to the common understanding of the meaning of the language used, and courts have no right to do otherwise. In the construction of this clause of the Constitution in *State* v. *Pitts.* 160 Ala. 133, 49 So. 441, 135 A. S. R. 79, it was held that a prohibition law which, in some of its major parts, applies to all of the State, does not lose its character as a general law because it retains in force local prohibition laws already in operation in some parts of the State. The reason is that the constitutional provision must be considered as applicable to each separate and distinct act. By way of illustration, the court said that there might be a proper classification of the schools of the

State, as to regulations for opening and closing the schools in different localities and for different control and management to meet the needs of the various localities in conformity with different conditions. When a law, as to its material and important features, applies to the whole State, it will not be converted into a local or special law because it does not operate alike in detail throughout the State. Reasonable classification can always be made under a general law.

In the application of this rule in *LeMaire* v. *Henderson,* 174 Ark. 936, 298 S. W. 327, the court sustained a statute classifying school districts in certain counties, and held that in classifying school districts the Legislature may consider the density of population, the wealth of the county, the system of roads, and the topography of the country with reference to whether it is hilly or not.

It is not the form, but the operation and effect, which determines the constitutionality of a statute. All of the counties must be included, or the law is not general. The exclusion of one or more counties from the operation of the act makes it local. If one may be excluded, where shall the line be drawn, and who is to judge?

In discussing the matter in *Edmunds* v. *Herbrandson,* 2 N. D. 270, 50 N. W. 570, 14 L. R. A. 725, the Supreme Court of North Dakota said: "If an act is not special because it relates to all except a single county in the State, without any reason for the classification, then the Legislature can accomplish indirectly what it is beyond their power to bring about by direct steps. Whenever it is desired to introduce a new rule as to a single county, a general law can be passed establishing that rule in all the counties, and then another law can be enacted re-establishing the old rule in all counties except the one singled out to be governed by the new rule. The first law would be clearly general, and, under what it is claimed is the New York doctrine, the second act could not be assailed as special legislation. This would, indeed, be an ingenious mode of neutralizing the constitu-

tional prohibition against special legislation. We would not give it our sanction, however it might be buttressed by authority."

In the case at bar, the Legislature expressly provided that the law shall not be applicable in two counties. As said by the court in the case last cited, these counties are either left out of the provisions of the law or there is no statutory rule permitting them to take advantage of the provisions of the act. Whatever view is taken, Faulkner and Sharp counties are placed in a separate class by themselves. It would not do to say that the Legislature might arbitrarily group together two counties and leave them outside of the provisions of the law. This would amount to allowing the Legislature to wholly disregard the constitutional amendment and leave the Legislature at its own will to say whether or not the law shall apply throughout the whole territorial limits of the State or whether its operation should be restricted to certain counties. While proper classification is allowed, it must stand upon some reason, and have regard to the character of the legislation and cannot be arbitrarily used by the Legislature.

Therefore, we are of the opinion that the law is not a general law because it does not have a uniform operation throughout the State. The entire acts presents a system for the establishment and regulation of the common schools in the various counties, and two counties are left out of the act, and the exclusion of one or more counties from the operation of the act makes it local. The classification of Faulkner and Sharp counties in a class by themselves is arbitrary and prevents it being a general law because the classification is without any reasonable basis.

It is next sought to uphold the statute by invoking the well-established rule that a statute may be in part constitutional and in part unconstitutional, and if it is separable in its nature, so that the valid and invalid parts may stand independent; and if there is no such con-

nection between the constitutional and unconstitutional parts as the Legislature would not have elected to enact the constitutional part without the other, the statute will be held good except in that part which is in conflict with the Constitution.

It is equally well-settled that if the unconstitutional part is so connected with the remainder that they are dependent upon each other and cannot be separated, or that the valid part, if left alone, would so change the character of the original statute that the Legislature would not be presumed to have enacted it without the other, the whole must be set aside.

In *Poindexter* v. *Greenhow*, 114 U. S. 270, 5 S. Ct. 903, Mr. Justice MATTHEWS, in discussing the question, said:

"It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see, and to declare, that the intention of the Legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the Legislature one they may never have been willing by itself to enact."

Again, in *Spraigue* v. *Thompson*, 118 U. S. 90, 6 S. Ct. 988, the court had under consideration a pilotage act of the State of Georgia, which was claimed to be in conflict with an act of Congress on the subject. The court was urged to disregard certain exceptions in a section of the statute which exempted a certain port in the State of Georgia and one in South Carolina and a certain port in the State of Georgia and one in Florida, contrary to the provision of the act of Congress on the subject. The Supreme Court of Georgia had held the statute valid in the application of the rule that the unconstitutional part exempting the ports above referred to, might be stricken

out and the remainder might stand, upon the principle that a separable part of a statute which is unconstitutional may be rejected and the remainder preserved and enforced. Justice MATTHEWS delivered the opinion of the court in this case and said:

"But the insuperable difficulty with the application of that principle or construction to the present instance is that, by rejecting the exceptions intended by the Legislature of Georgia, the statute is made to enact what confessedly the Legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what any one can say it would have enacted in view of the illegality of the exceptions. We are, therefore, constrained to hold that the provisions of § 1512 of the Code of Georgia cannot be separated so as to reject the unconstitutional exceptions merely, and that the whole section must be treated as annulled and abrogated by § 4237 of the Revised Statutes."

This rule has been uniformly recognized both by the Supreme Court of the United States and by this court. Employers' Liability Cases, 207 U. S. 463, 28 S. Ct. 141; *Leach* v. *Smith*, 25 Ark. 246; *Bittle* v. *Stuart*, 34 Ark. 224; *Ex parte Jones*, 49 Ark. 118, 4 S. W. 639 and *State* v. *Williams-Echols Dry Goods Co.*, 176 Ark. 324, 3 S. W. (2d) 340. In the late case of *Williams* v. *Standard Oil Company*, 278 U. S. 235, 49 S. Ct. 115, the court quoted from an opinion of the New Jersey Court of Errors and Appeals, delivered by Judge Pitney, (afterwards a Justice of the Supreme Court of the United States), who after setting forth the rule above announced, said:

"In seeking the legislative intent, the presumption is against any mutilation of a statute, and the courts will resort to elimination only where an unconstitutional provision is interjected into a statute otherwise valid, and is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process."

The legislative journals show the act as originally introduced did not contain the proviso excepting Faulkner and Sharp counties from the terms of the act. How can we know that the proviso was not the consideration or inducement for the Legislature to pass the statute? We do know that the proviso is a part of the statute which we are asked to hold constitutional, and that the statute does not mean the same thing without the proviso as it does with it. The statute with the proviso does not apply to Faulkner and Sharp counties. Without the proviso it would apply to the whole State. We have not been able to find any authorities authorizing us to separate a statute which by its own terms is indivisible, or to construe a statute as separable within the meaning of the rule above announced, when to do so would give the part of the statute allowed to stand a wholly different effect and meaning from the statute as a whole. We have reached the conclusion that the attempt to interpret the act by upholding part and rejecting part of the law, as stated in *Washington* v. *State*, 13 Ark. 75, is equivalent to the usurpation by the court of legislative power.

It is manifest that the territory will be enlarged by the elimination of the proviso that the act shall not apply to Faulkner and Sharp counties, and the territory over which the law is to operate would be enlarged to the extent of these two counties which are specifically named in the act, and this would be in practical effect judicial legislation, which we are not willing to undertake to accomplish what the school men earnestly insist is a wise and beneficial change in our school law. Indeed, we would have been content to let our original opinion stand without enlargement, but for the strong insistence in the matter by leading school men.

The established rule on the subject, laid down by Lewis' Sutherland Statutory Construction, (2d ed.) vol. 1, § 306, reads as follows:

"If, by striking out a void exception, proviso or other restrictive clause, the remainder, by reason of its

generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part.

"An act of a general nature which the Constitution required to have a uniform operation throughout the State excepted certain counties from its operation. This rendered the whole act void. After striking out the exception, if the general words gave the act operation in the excepted counties, such effort would be directly contrary to the expressed intent of the lawmaker."

It is true that article 14 of our Constitution deals with the subject of education and requires the Legislature to make provision for the support of our common schools. It does not require, however, the Legislature to accomplish that purpose by local or special legislation. On the other hand, § 3, of the article expressly provides that the General Assembly shall provide by general laws for the support of the common schools by taxes. The section also provides that the General Assembly, by general law, may authorize school districts by a vote of the qualified electors to vote a millage tax. Amendment No. 14 to the Constitution only changes the section so as to allow the voters to increase the school tax.

In this connection we do not wish to be understood as impairing in the least the force of the decisions in *State* v. *Crawford*, 35 Ark. 236, which holds that a statute settling accounts between the State and certain parties is a general and not a special act; and in *Waterman* v. *Hawkins*, 75 Ark. 120, 86 S. W. 844, holding that statutes establishing or abolishing separate courts relate to the administration of justice and are not either local or special in their operation. This is in recognition of that principle of State sovereignty under which the State, through its Legislature, may protect its own interest, and by virtue of it the Legislature may treat every subject of sovereignty as within a class by itself, and bills of that kind are usually held to be general and not local

or special laws. There are cases where the State, by its Legislature, commits the discharge of its sovereign political functions to agencies selected by it for that purpose, and such acts have usually been held to be general acts.

Neither do we wish to impair the force of cases like *Harwood* v. *Wentworth,* 162 U. S. 547, 16 S. Ct. 890, where Congress by legislation fixed the salaries of county officers of the territory of Arizona and thereby displaced the system of fees and allowances; and the act was held to be a general one, and not a local or special law. The court said that the act was general in its operation, and applied to all counties in the territory. The counties were classified for the purpose of fixing the salaries of the county officers according to population, wealth, and other things, which were calculated to furnish a reasonable basis for the classification so that, as nearly as practical, the officers would be compensated according to the amount of work done.

In the case at bar, the exemption of two counties from the application of the act did not constitute any reasonable basis for classification for school purposes. Indeed, there was no attempt at classification. By the terms of the act, Faulkner and Sharp counties were specifically exempted from its provisions, and we are asked by a judicial interpretation to place them under the operation of the act. While it has been the policy of this court, in construing statutes relating to schools and school districts, to give them a liberal construction and to uphold them when that can be done without violating the Constitution, we have no power by judicial construction to put a law in force in a county or counties where the Legislature expressly provided it should not apply.

The result of our view is that our former opinion was correct, and the motion for rehearing will be denied.

Justices MEHAFFY, McHANEY and BUTLER dissent.