## Dunn v. Hart, Mayor, et al.

May 26, 1942.

Wells Overbey for appellant.

Leo T. Wolford, James W. Stites and John G. Ryan for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On April 13, 1942, the board of council of the city of Murray, a city of the fourth class, passed an ordinance in conformity with Section 3480d-1 et seq., of the Kentucky Statutes, for the purchase, through the Tennessee Valley Authority, of the electric distribution system in the city of the Kentucky-Tennessee Light & Power Company. Until the institution of this action on May 14, 1942, the provisions of Chapter 89-3, Article 13, of the Kentucky Statutes, Sections 3480d-1 to 3480d-20, inclusive, governing the acquisition of electric light, heat, and power plants in cities of the second, third, fourth, fifth, and sixth classes, had been complied with. Section 3480d-3 of the Statutes provides that the common council

of the city may purchase from the owner an electric light and power plant after publishing the agreement of purchase for a period of 45 days. If a petition for a referendum is filed within that period, the question must be submitted to a vote of the people at the next November election. At the 1942 session of the General Assembly a comprehensive act, known as House Bill 146, governing the acquisition and operation of electric power systems by cities and counties was passed. This Act, which becomes effective 90 days after the General Assembly adjourned, provides that before any municipality shall have authority to purchase an electric plant the question shall be submitted to its qualified voters. On May 14, 1942, L. L. Dunn, a citizen and taxpayer of the city of Murray, instituted a Declaratory Judgment proceeding in the Calloway circuit court seeking a declaration of rights on two points: (1) As to the date upon which House Bill 146 becomes effective; and (2) as to whether or not the defendants can continue under the authority conferred by Section 3480d-1, et seq., of the Statutes to complete the purchase of the electric power distribution system in the city or whether present proceedings must be discontinued and new proceedings instituted under House Bill 146. The city, its mayor, the members of its board of council, and the Kentucky-Tennessee Light & Power Company were made defendants. It was alleged in the petition that House Bill 146 becomes effective on June 1, and that it was enacted to take the place of Section 3480d-1, et seq., Kentucky Statutes. It was also alleged that unless the properties could be acquired by a fully consummated contract prior to June 1 they could not be acquired under the existing law; that the 45-day advertizing period would not expire until midnight May 30; that May 31 is Sunday; and that therefore the acquisition of the properties could not take place prior to June 1, and hence could not take place at all under the existing law. The plaintiff asked for an injunction restraining the defendants from proceeding under the contract of April 13. A demurrer to the petition was sustained, and, the plaintiff having declined to plead further, his petition was dismissed. The chancellor adjudged, in effect, that House Bill 146 was not intended to affect proceedings already instituted prior to the time it becomes a law, and since appellees have initiated proceedings under the present law those proceedings may be completed without regard to House Bill 146.

We deem it unnecessary to determine the first question raised by the pleadings; that is, when do the Acts of the General Assembly of 1942 not carrying an emergency clause become effective, since we have concluded the judgment should be affirmed regardless of the effective date of House Bill 146.

If a petition for a referendum is not filed, the final consummation of the purchase agreement can be made on or after June 1. All that will remain to be done will be the payment of the purchase price by the purchaser and delivery of the property by the seller. Appellant concedes that if the 45-day advertizing period had expired in time to permit the city to consummate the agreement of April 13 and thereby actually acquire the properties before the effective date of House Bill 146, the proceedings initiated under the present law would be legal. If the argument is sound, then the filing of a petition for a referendum, which would suspend the proceedings until the result of an election in November is ascertained, would vitiate the proceedings initiated under the old act and the parties would be compelled to start anew though the 45-day advertizing period would have expired before the effective date of the new act. It was not the intention of the General Assembly in enacting House Bill 146 to bring about such a situation. On the other hand, it anticipated such a contingency when it provided in Subsection 2 of Section 2 of the Act that "any proceedings heretofore taken by any municipality relating to the subject matter of this Act, whether or not commenced under any other law, may be discontinued by the municipality and new proceedings instituted under this Act." Obviously it was the intention of the General Assembly to give to a city the choice of continuing proceedings for the purchase of an electric plant commenced before the effective date of the 1942 Act or of discontinuing them and instituting new proceedings. The clear implication is that proceedings already instituted are not required to be terminated. The chancellor, in a well considered opinion, has declared the rights of the parties in accordance with our conclusions, and the following from his opinion is adopted as the opinion of this court; after citing State Board of Election Commissioners v. Coleman, 235 Ky. 24, 29 S. W. (2d) 619, and Board of Regents v. Engle, 224 Ky. 184, 5 S. W. (2d) 1062, and other cases holding that a legislative act has no force for any purpose prior to its effective date, the chancellor said:

"It seems apparent from these decisions that the defendants, during the ninety day period following adjournment, properly proceeded under the law now in existence and, indeed, could not, if they would, proceed under House Bill 146 before it became a law.

"A copy of House Bill 146 is filed with the petition as an exhibit, and it is of course not denied that this is the law which will take effect at the end of the ninety day period. I am thus left with the duty to determine whether or not House Bill 146 will affect the presently instituted proceedings one way or the other. This involves a consideration of the terms of the Bill.

"The Legislature itself has furnished a rule of construction under Section 465 of the Kentucky Statutes which is helpful in this connection. This section, so far as pertinent provides:

" 'No new law shall be construed  *  *  *  as to any act done  *  *  *  or any right accrued or claim arising under the former law, or in any way whatever to affect any  *  *  *  act so committed or done  *  *  *  or any right accrued or claim arising before the new law takes effect, save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings  *  *  *.'

"House Bill 146 only purports to repeal existing laws in conflict with it 'to the extent of such conflict.' Plainly, House Bill 146 does not purport to change the existing law so far as presently owned municipal electric plants are concerned except to give authority to municipalities now operating such plants to elect to operate under the new law.  *  *  *

"It is apparent that if no referendum is filed under the proposed plan, the only thing left for the City to do is to tender the purchase money and receive a conveyance. Of course, if a referendum petition should be filed, the tendering of the purchase money and the receipt of the conveyance would have to await the result of the November election. But this, again, is a mere step in the chain of proceedings actually instituted under a valid existing statute on April 13th. To all intents and purposes the City

had an equitable title and has 'acquired' the plant prior to the effective date of House Bill 146.

"We think that some significance can be attached to the last sentence in Subsection 2 of Section 2 of the Act quoted above. The General Assembly apparently recognized the proceedings might be instituted and in process of completion upon the the effective date of House Bill 146. It authorized municipalities to discontinue such pending proceedings and to institute new proceedings under the new Act. However, it did not require municipalities to do so, and I do not think that it meant to interfere with programs already launched under the existing law.

"Further, we must not lose sight of the fact that the municipality has in good faith entered into a contract for the purchase of its plant under the present law. Even though this contract was entered into with full knowledge of the fact that there would be a change in the law at the end of ninety days from the adjournment of the General Assembly, I do not believe that the Courts should strain a point to impair the obligation of the contract.

"To accept the view that the defendants cannot continue the present proceedings after the effective date of House Bill 146 would, in effect, be to determine that the Legislature intended to leave the municipalities high and dry with no effective statutory authorization during the ninety day period which they might follow in acquiring their electric distribution systems. The result of such an unfortunate construction is apparent in the present case. It appears from the statement of counsel that negotiations have been under way for several years to purchase this plant. The bankruptcy of the top holding companies which indirectly own the system, together with the disintegration requirements of the Securities & Exchange Commission, and the present war emergency, have all concurred to bring about a sale at a price deemed favorable by the municipality and acceptable to the sellers. It is not to be presumed that the Legislature meant to hamstring municipalities during this ninety day period in such a way as to prevent them from taking advantage of the favorable opportunity presented."

It is our conclusion that House Bill 146 was not intended to affect contracts made and proceedings instituted for the purchase of electric plants by cities prior to its effective date.

The judgment is affirmed.

Whole Court sitting.