Humphrey, State Auditor *v.* Thompson.

5-243                                   263 S. W. 2d 716

Opinion delivered January 11, 1954.

*Tom Gentry,* Attorney General, *James L. Sloan,* Assistant Attorney General, *Talley & Owen, Gene Worsham* and *Dale Price,* for appellant.

*H. B. Stubblefield,* for appellee.

Ed. F. McFaddin, Justice. By this suit appellee Thompson, as a citizen and taxpayer, challenged the constitutionality of Act 273 of 1953. He named State Auditor Humphrey and State Treasurer Clayton as defendants; and prayed that they be enjoined from performing

anything required of them by the said Act 273. Other citizens and taxpayers intervened as defendants, and filed answers; and the case was heard upon evidence offered by the said intervenors. The Chancery Court held the Act to be violative of both Amendment 14 and Amendment 19 of the Arkansas Constitution, and entered a decree granting the plaintiff (appellee) his prayed relief. The State Officials and the intervenors unite as appellants to challenge the decree.

Before discussing the issues, we set out the caption and two of the sections of the Act 273 of 1953, to-wit:

"AN ACT to Establish a Vocational School in All Counties Having a Population of Less Than 6,000 According to the 1950 Census, to Establish a Construction Fund and for Other Purposes. . . .

"Section 1. There is hereby established a Vocational School in all counties having a population of less than 6,000 according to the 1950 census. . . .

"Section 13. For each such school coming within the provisions of Section 1 there is hereby appropriated out of the General Revenue Fund $200,000 for each such school so qualifying to be used as a construction fund for establishing such schools."

I. *Was This Suit Premature?* The State Officials (Humphrey as Auditor, and Clayton as Treasurer), demurred to the complaint, and elected to stand on their demurrer. They claim that the Act 273 was approved by the Governor March 11, 1953; that it had no emergency clause; that it could not and did not go into effect until June 11, 1953, which was 90 days[1] after the final Legislative adjournment; that this suit was filed April 1, 1953; that the decree was rendered in the Chancery Court on June 5, 1953; and that both of these dates of judicial action were prior to the date that the Act 273 went into effect. The State Officials claim that until the Act 273

---

[1] The 1953 Legislature adjourned March 12, 1953; and Amendment No. 7 to the Constitution regulates the effective date of an Act that does not have a valid emergency clause. See *Fulkerson* v. *Refunding Board,* 201 Ark. 957, 147 S. W. 2d 980.

became a law, it could not be attacked in the Courts. They cite, *inter alia*, the following: *Files* v. *Robinson*, 30 Ark. 487; *State* v. *Little Rock, etc., R. Co.*, 31 Ark. 701; *State ex rel. Brunjes* v. *Bockelman* (Mo.), 240 S. W. 209; *Board of Regents* v. *Engle*, 224 Ky. 184, 5 S. W. 2d 1062; *Price* v. *Hopkins*, 13 Mich. 318; *Board of Iroquois County* v. *Keady*, 34 Ill. 293; and *City of St. Louis* v. *Alexander*, 23 Mo. 483.

Even though the Act 273 did not go into effect and become a law until June 11, 1953, nevertheless, between the dates of the Legislative adjournment and the effective date, the Act hung like a suspended sword. It was known that the Act, if valid, would become effective on June 11, 1953, unless before that date a referendum petition should be filed under Constitutional Amendment No. 7; and it was realized that immediately after June 11, 1953, each of the State Officials herein involved could proceed to perform the duties required of him under the Act. Certainly Thompson as a citizen and taxpayer could and should be allowed to "take time by the forelock" and seek an injunction to prevent any action being taken under what he perceived to be an unconstitutional Act. The purpose of an injunction is to prevent injuries from occurring or continuing: and Thompson sought an injunction herein. A case in point is *Pierce* v. *Society*, 268 U. S. 510, 69 L. Ed. 1070, 45 S. Ct. Rep. 571. The State of Oregon in 1922 enacted a law which stated that such law would take effect on September 1, 1926. In 1924—at least two years before the effective date of the law—suits were filed to enjoin its enforcement. The cases were decided by the Supreme Court of the U. S. on June 1, 1925—more than one year before the effective date of the law. The contention was made—just as here —that any suits involving the law were premature until the law became effective; but in denying the contention and affirming the issuance of an injunction, the Supreme Court of the U. S. said:

"The suits were not premature. The injury to appellees was present and very real,—not a mere possibility in the remote future. If no relief had been possible

prior to the effective date of the act, the injury would have become irreparable. Prevention of impending injury by unlawful action is a well-recognized function of courts of equity.''

We therefore hold that Thompson's suit for injunctive relief was not premature,[2] and that the Chancery Court was correct in overruling the demurrer of the State Officials.

II. *Is the Act 273 Violative of Constitutional Amendment No. 14?* This Amendment, adopted in 1926, reads in part:

''The General Assembly shall not pass any local or special Act. . . .''

We have a number of cases decided under Amendment No. 14. One of our earlier cases arising under it was *Webb* v. *Adams,* 180 Ark. 713, 23 S. W. 2d 617, in which we said:

''The exclusion of a single county from the operation of the law makes it local, and it cannot be both a general and a local statute. . . . The courts look to the substance and practical operation of a law in determining whether it is general, special or local, and if its operation must necessarily be special or local, it must be held to be special or local legislation, whatever may be its form. . . . A local law is one that applies to any subdivision or subdivisions of the State less than the whole. . . . A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some person, place or thing from those upon which, but for such separation, it would operate. . . .''

In *Smalley* v. *Bushmiaer,* 181 Ark. 874, 31 S. W. 2d 292, as well as in *Cannon* v. *May,* 183 Ark. 107, 35 S. W. 2d 70, the questioned Legislative Act applied to only one

---

[2] For cases pointing out that injunctions may be granted before acts of injury in situations somewhat analogous to those in the case at bar, see *Carter* v. *Carter Coal Co.,* 298 U. S. 238, 80 L. Ed. 1160, 56 S. Ct. 855; *Truax* v. *Raich,* 239 U. S. 33, 60 L. Ed. 131, 36 S. Ct. 7; *Gallardo* v. *Porto Rico Co.,* 18 Fed. 2d 918; and *Cleveland* v. *Davis,* 9 Fed. Supp. 337.

County, and in each case we held the Legislative Act to be void as violative of Amendment No. 14. In *State ex rel. Burrow* v. *Jolly*, 207 Ark. 515, 181 S. W. 2d 479, the Act 73 of 1943 attempted to apply to Counties having a population of not less than 18,300, and not more than 18,350. In holding the population classification of the Act to be violative of Constitutional Amendment No. 14, we said:

"The general principle was stated by Chief Justice HART in *Simpson* v. *Matthews*, 184 Ark. 213, 40 S. W. 2d 991. The Amendment, said the Chief Justice, was intended to prevent arbitrary classification 'based on no reasonable relation between the subject-matter of the limitation and classification made.' It was then said: 'The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject of the legislation, and the judgment of the Legislature in the matter should control unless the classification is . . . made for the purpose of evading the Constitution. If the judgment of the Legislature must control in all cases, the Amendment could serve no purpose, and the people might just as well not have initiated and adopted it.'

"A quotation from Ruling Case Law, cited in *State ex rel. Atty. Gen.* v. *Lee*, 193 Ark. 270, 99 S. W. 2d 835, asserts that in determining whether a law is public, general, special, or local, the courts will look to its substance and practical operation rather than to its title, form, and phraseology, 'because otherwise prohibitions of the fundamental law against special legislation would be nugatory.' . . .

"Our view is that the so-called 'classification' is but an attempt by technicality to evade what the courts have heretofore said the people meant when by amendment to the Constitution they struck at the evil flowing from local and special laws."

Our most recent case applying Amendment No. 14 to a situation similar to that here involved, is *Wilson* v.

*State*, 222 Ark. 452, 261 S. W. 2d 257; and we there called attention to the article in the Arkansas Law Review (Vol. 3, No. 2) which lists and discusses many of our cases. When we consider Act 273 of 1953 in the light of our previous holdings, it is clear that the said Act violates Amendment No. 14. By judicial notice as well as by stipulation in the record, we know that Perry County is the only County in the State having a population of less than 6,000, according to the 1950 census: so the Legislature, in using the census figure, was obviously trying to avoid mentioning by name the only County in the State affected by the Act—*i.e.*, Perry County.

Furthermore, the intervenors introduced school men to show that a vocational school was needed in Perry County; but even these school men admitted that population afforded no basis on which to justify the classification, because here is the testimony of one such witness:

"Q. It has been shown here that the 1950 Federal Census showed Perry County to have a population of 5,978 and that the same census shows Montgomery County to have a population of 6,680. Would you know of any reason why that differential in population would make Perry County need a vocational school more than Montgomery County?

"A. None. . . .

"Q. And there would be no reason for Perry County having any special need over these counties that have a few more population than Perry County?

"A. I wouldn't know of any, no, sir."

But appellant intervenors argue that the State has a right to provide for a school by name, and that when we consider Act 273 of 1953 along with Act 145 of 1927 (which, with amendment, is now § 80-2501 *et seq.*, Ark. Stats.), it is manifest that the Act 273 was to supplement the law in regard to vocational schools, as found in § 80-2501 *et seq.*, Ark. Stats. It is clear that the Legislature could have taken up the general matter of vocational schools—as it did in § 80-2501 *et seq*, Ark. Stats.—

and enacted general legislation regarding them; but the fact remains that the Legislature did not enact such general legislation by Act 273 of 1953.

The various Arkansas Legislatures, beginning in 1927, passed Acts affecting salaries of Clerks—such as the one held void in *Cannon* v. *May, supra*—and then finally by Act 380 of 1947 the Legislature took up the question of Clerks' salaries generally over the entire State, and passed the Act that is now found in § 23-110 *et seq.*, Ark. Stats., which latter is law based on classification of Counties by population over the entire State. The distinction between Act 150 of 1929—held void in *Cannon* v. *May, supra*—and the Act 380 of 1947—found in § 23-110 *et seq.*, Ark. Stats.— demonstrates the clear distinction between local or special legislation on the one hand, and general legislation on the other. That same distinction is apparent between local Act 273 of 1953 here involved, and the general act on vocational schools, as found in § 80-2501 *et seq.*, Ark. Stats.: the local act affects only one locality arbitrarily selected; while the general act affects all parts of the State similarly situated.

Act 273 of 1953 is clearly local and is void as violative of Amendment No. 14 to the Constitution; and the Chancery Court was correct in so holding.

III. *Does the Act No. 273 of 1953 Violate Amendment No. 19 of the Constitution?* The Chancery Court also held that the Act 273 was violative of Amendment No. 19; and the briefs filed herein are addressed to that holding. It is conceded that the Act 273 failed to receive three-fourths the vote of the membership of each House of the Legislature. Appellee argues that even if the Act related to the 1953-54 fiscal year, nevertheless the appropriation bills passed by both Legislative Branches had exceeded the 2½ million dollar figure for the biennium when the bill for Act 273 went to the Governor. Appellants argue that the test of the 2½ million dollar figure is to be determined as of the time when the Governor signs the bill rather than when it is sent to

him. These matters are interesting, but we find it unnecessary to decide them in this case because we hold the Act 273 to be void as violative of Amendment No. 14 to the Arkansas Constitution.

Affirmed.

GEORGE ROSE SMITH, J., dissenting. The majority seem to overlook the fact that Act 273 created not a county school but a State institution. This institution was to be built with State funds and to be operated under the supervision of the State Department of Education. Section 6 of the Act requires that the rules for admission to the school be uniform throughout the State. We must conclude that the Legislature, for reasons which do not concern the courts, decided that there was a need for another State vocational school.

We must further assume that the Legislature knew that Perry County was the only county having a population of less than 6,000 according to the 1950 census. Not to make that assumption would be to say that the members of the General Assembly voted for Act 273 without knowing how many schools they were creating, nor how much money they were appropriating. Hence Act 273 states in effect that the only school being created is to be located in Perry County. The question is whether that designation of the school's site violates Amendment 14.

It seems plain to me that it does not. No one doubts the Legislature's authority to establish a new State institution of learning. Over the years there have been created a State university, a medical school, a school for the deaf, a school for the blind, several agricultural colleges, etc. Each new institution must obviously be located somewhere, and there is nothing in the Constitution to prevent the Legislature from making that determination. A matter of this kind does not lend itself to general legislation in the sense that every county must be provided with a State university of vocational school of its own, and for that reason the ban against local legislation is inapplicable. There is no more basis for condemning Act 273 as

a local law than there is for taking the same position with respect to statutes authorizing the construction of new buildings at the University of Arkansas, the State Hospital, or any other State agency. As we said in *Matthews v. Bailey,* 198 Ark. 830, 131 S. W. 2d 425; "The State may legislate with respect to its own affairs. Amendment No. 14 to the Constitution has no application here."

Since the majority have not found it necessary to say whether Act 273 required a three-fourths vote for its passage I express no opinion on that question.

WARD and ROBINSON, JJ., join in this dissent.